1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10              February 2005 Grand Jury

| | | |
|---|---|---|
| 11 | UNITED STATES OF AMERICA, ) | CR No. 05-1046(B) |
| 12 | Plaintiff, ) | S E C O N D |
| | ) | S U P E R S E D I N G |
| 13 | v. ) | I N D I C T M E N T |
| | ) | |
| 14 | ANTHONY PELLICANO, ) | [18 U.S.C. § 1962(c): |
| | MARK ARNESON, ) | Racketeer Influenced and |
| 15 | RAYFORD EARL TURNER, ) | Corrupt Organizations (RICO); |
| | KEVIN KACHIKIAN, ) | 18 U.S.C. § 1962(d): RICO |
| 16 | ROBERT PFEIFER, ) | Conspiracy; 18 U.S.C. §§ 1343, |
| | ABNER NICHERIE, and ) | 1346: Honest Services Wire |
| 17 | DANIEL NICHERIE, ) | Fraud; 18 U.S.C. |
| | ) | § 1030(a)(2)(B), (c)(2)(B)(i): |
| 18 | Defendants. ) | Unauthorized Computer Access |
| | ) | of United States Agency |
| 19 | ) | Information; 18 U.S.C. |
| 20 | ) | § 1028(a)(7): Identity Theft; |
| | ) | 18 U.S.C. § 1030(a)(4): |
| 21 | ) | Computer Fraud; 18 U.S.C. |
| | ) | § 371: Conspiracy; 18 U.S.C. |
| 22 | ) | § 2511(1)(a),(d): Interception |
| | ) | of Wire Communications; 18 |
| 23 | ) | U.S.C. § 2512(1)(b): |
| | ) | Possession of Wiretapping |
| 24 | ) | Device; 18 U.S.C. |
| | ) | § 1001(a)(2): False |
| 25 | ) | Statements; 18 U.S.C. |
| | ) | § 1512(b)(3): Witness |
| 26 | ) | Tampering; 18 U.S.C. |
| | ) | § 1512(c)(1): Destruction of |
| 27 | ) | Evidence; 18 U.S.C. § 2: |
| | ) | Aiding and Abetting and |
| 28 | ) | Causing an Act to Be Done; 18 |
| | ) | U.S.C. § 1963: RICO Forfeiture] |

FILED

2006 FEB -1 PM 2:27
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

ENTER ON ICMS
FEB - 8 2006

38

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1962(c)]

[Racketeering]

[Defendants PELLICANO, ARNESON, and TURNER]

I.   INTRODUCTION

At all times relevant to this Second Superseding Indictment (this "Indictment"):

A.   Defendants and Their Associates

1.   Defendant ANTHONY PELLICANO was a private investigator doing business under the names of Pellicano Investigative Agency, Ltd., Anthony J. Pellicano Negotiations, Forensic Audio Lab, and Syllogistic Research Group, all located at 9200 Sunset Boulevard, Suite 322, Los Angeles, California 90210.  Defendant PELLICANO was licensed as a private investigator from in or around 1983 until on or about February 2, 2004, by the California Department of Consumer Affairs' Bureau of Security and Investigative Services.

2.   Defendant MARK ARNESON was a public official and sworn law enforcement officer employed by the City of Los Angeles, California, as an officer of the Los Angeles Police Department ("LAPD").  On or about June 10, 1974, defendant ARNESON took his oath of office as an LAPD officer, swearing that he would well and faithfully discharge the duties of his office.  After taking this oath, defendant ARNESON became an LAPD police officer in June 1974, became an LAPD Detective in September 1984, and became an LAPD Sergeant in April 1996.  As a public official and sworn

2

1  law enforcement officer, defendant ARNESON owed a duty of honest

2  services to the LAPD and the citizens he was sworn to serve.

3      3.   Defendant RAYFORD EARL TURNER was, prior to his

4  retirement on or about December 15, 2001, employed by SBC and its

5  predecessor company, Pacific Bell (collectively "SBC") as a field

6  technician.

7      4.   Craig Stevens was a public official and sworn law

8  enforcement officer employed by the City of Beverly Hills,

9  California, as an officer of the Beverly Hills Police Department

10 ("BHPD").  As a public official and sworn law enforcement

11 officer, Stevens owed a duty of honest services to the BHPD and

12 the citizens he was sworn to serve.

13     5.   Teresa Wright was, prior to her termination on or about

14 November 21, 2003, employed by SBC as a sales support manager.

15 B.   THE LAPD AND BHPD COMPUTER SYSTEMS

16     6.   From on or about June 10, 1974, through on or about

17 October 10, 2003, as a result of his position as an LAPD officer,

18 defendant ARNESON was authorized to access LAPD's computer system

19 in the Los Angeles Pacific Division offices and elsewhere to

20 obtain criminal history and other law enforcement information

21 from computer systems and databases maintained exclusively for

22 law enforcement uses, including the National Crime Information

23 Center ("NCIC") and the California Department of Motor Vehicles

24 ("DMV").  Defendant ARNESON was authorized to access these law

25 enforcement computer systems and databases only for official LAPD

26 purposes related to his official investigative duties.

27     7.   As part of his LAPD oath of office, defendant ARNESON

28 swore that he would adhere to the standards of conduct set forth

3

1  in the LAPD Manual.  The LAPD Manual prohibits an LAPD officer
2  from making unauthorized use of information obtained through
3  employment with the LAPD, disclosing law-enforcement information
4  except as required in the performance of official duties, using
5  LAPD computer systems and information obtained through them for
6  non-official purposes, releasing criminal history information to
7  individuals lacking legal authority to have access to such
8  information, and/or engaging in outside employment without prior
9  approval.

10       8.   From on or about May 5, 1982, through on or about
11 January 6, 2006, as a result of his position as a BHPD officer,
12 Craig Stevens was authorized to access BHPD's computer system in
13 the BHPD offices and elsewhere to obtain criminal history and
14 other law enforcement information from computer systems and
15 databases maintained exclusively for law enforcement uses,
16 including NCIC and DMV.  Craig Stevens was authorized to access
17 these law enforcement computer systems and databases only for
18 official BHPD purposes related to his official investigative
19 duties.

20       9.   NCIC is accessed remotely by law enforcement computer
21 terminals located throughout the United States and is therefore
22 used in interstate communication.  NCIC, which is operated by the
23 Federal Bureau of Investigation, maintains a database of
24 electronically stored information located in Clarksburg, West
25 Virginia.

26       10.  The LAPD and BHPD computer systems are exclusively for
27 the use of the LAPD and BHPD respectively and are used in
28 interstate communication.

C.    SBC'S CONFIDENTIAL AND PROPRIETARY INFORMATION

1

2    11. SBC's written Code of Business Conduct requires that

3    employees maintain the privacy of customer records, including the

4    number and type of customers' telephone lines and records of

5    customers' telephone usage.  SBC employees are prohibited from

6    accessing, using or disclosing customer records, reports or

7    proprietary information without a valid business reason.

8    12.  In her capacity as a sales support manager for SBC,

9    Teresa Wright was authorized to access SBC's computer system in

10    the SBC offices and elsewhere to obtain confidential information

11    on SBC's residential customers, including telephone toll records,

12    telephone numbers, and home addresses, from computer systems and

13    databases maintained exclusively for law enforcement uses,

14    including the Billing and Order Support System ("BOSS"), the

15    Premises Information System ("PREMIS"), and the Service Order

16    Retrieval and Distribution System ("SORD").  Teresa Wright was

17    authorized to access these computer systems and databases only

18    for valid SBC business reasons.

19    13.  In his capacity as a field technician for SBC,

20    defendant TURNER had authorization to obtain confidential

21    information on SBC's residential customers from other SBC

22    employees with access to SBC computer systems and databases,

23    including Teresa Wright.  Defendant TURNER was authorized to

24    obtain this confidential information only for valid SBC business

25    reasons.  Defendant TURNER's authorization to obtain any such

26    confidential information for any purpose ended with his

27    retirement from SBC on or about December 15, 2001.

28

## II.   THE ENTERPRISE

14.   At all times relevant to this Indictment, defendants ANTHONY PELLICANO, MARK ARNESON, and RAYFORD EARL TURNER, together with other individuals known and unknown to the Grand Jury, and the Pellicano Investigative Agency, Ltd., together with other legal entities known and unknown to the Grand Jury, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals and legal entities associated in fact (the "Enterprise").  The Enterprise was bound together by the common purpose of earning income through the conduct of diverse criminal activities including, but not limited to, illegal wiretapping, unauthorized access of protected computers, wire fraud, bribery, identity theft, and obstruction of justice.  The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.  The Enterprise operated primarily in Los Angeles, California, within the Central District of California.  The Enterprise was engaged in, and its activities affected, interstate commerce.

### III. PURPOSES OF THE ENTERPRISE

15.   The purposes of the Enterprise included:

a.   Enriching the members and associates of the Enterprise through obtaining private, personal, and confidential information regarding defendant PELLICANO's investigative targets and litigative opponents through illegal means, including but not limited to identity theft, wire fraud, bribery, and unauthorized access of protected computer databases.

6

b.   Enriching the members and associates of the
Enterprise through using the illegally obtained information to
subvert and corrupt the judicial process.

c.   Enriching the members and associates of the
Enterprise through using the illegally obtained information to
strengthen and expand defendant PELLICANO's reputation and
ongoing relationship with lucrative clients, including
entertainment celebrities and executives, attorneys, and law
firms.

d.   Promoting and enhancing the Enterprise and its
members' and associates' activities.

IV.   MANNER AND MEANS OF THE ENTERPRISE

16.   Defendants and their associates conducted and
participated in the conduct of the management, operation, and
affairs of the Enterprise in the manner and by the means
described below.

17.   Defendant PELLICANO was the organizer and leader of the
Enterprise and directed other members of the Enterprise in
carrying out unlawful and other activities in furtherance of the
conduct of the Enterprise's affairs.  Defendant PELLICANO was
responsible for securing clients who were willing and able to pay
large sums for the purpose of obtaining personal information of a
confidential, embarrassing, or incriminating nature regarding
other individuals, including opponents or witnesses in criminal
or civil litigation, who became the Enterprise's investigative
targets.

18.   Defendant PELLICANO paid bribes to corrupt public
officials, including defendant ARNESON, Craig Stevens, and others

7

1 │ known and unknown to the Grand Jury, and to corrupt telephone

2 │ company employees, including defendant TURNER, Teresa Wright, and

3 │ others known and unknown to the Grand Jury, for purposes of

4 │ obtaining confidential and proprietary information regarding the

5 │ Enterprise's investigative targets.

6 │     19.  With respect to defendant ARNESON:

7 │     a.  Defendant PELLICANO provided defendant ARNESON

8 │ with names and/or other personal identifying information of

9 │ individuals whom defendant PELLICANO was investigating and as to

10 │ whom he wished to obtain confidential law enforcement

11 │ information.

12 │     b.  Defendant ARNESON accessed without authorization,

13 │ and in excess of his authorized access, the LAPD computer system

14 │ to obtain and provide criminal history and other law enforcement

15 │ information for the use of defendant PELLICANO.

16 │     c.  Defendant ARNESON solicited, and defendant

17 │ PELLICANO provided to defendant ARNESON, payment for obtaining

18 │ and providing criminal history and other law enforcement

19 │ information.  In particular, defendant PELLICANO made payments to

20 │ defendant ARNESON by means of Pellicano Investigative Agency,

21 │ Ltd. business checks in at least the following amounts in return

22 │ for obtaining and providing criminal history and other law

23 │ enforcement information:

| Year | Minimum Payment |
|------|------|
| 1997 | $8,875 |
| 1998 | $47,915 |
| 1999 | $38,325 |
| 2000 | $34,500 |

8

| | |
|---|---|
| 2001 | $32,250 |
| 2002 | $27,500 |

Defendant ARNESON solicited and received from defendant PELLICANO additional payments in cash in order to conceal these additional payments received from defendant PELLICANO.

      d.  Defendant ARNESON failed to obtain permission from LAPD to engage in employment for defendant PELLICANO.

      20.  With respect to Craig Stevens:

      a.  Defendant PELLICANO provided Stevens with names and/or other personal identifying information of individuals whom defendant PELLICANO was investigating and as to whom he wished to obtain confidential law enforcement information.

      b.  Stevens accessed without authorization, and in excess of his authorized access, the BHPD computer system to obtain and provide criminal history and other law enforcement information for the use of defendant PELLICANO.

      c.  Stevens solicited, and defendant PELLICANO provided to Stevens, payment for obtaining and providing criminal history and other law enforcement information.

      d.  Stevens failed to obtain permission from BHPD to engage in employment for defendant PELLICANO.

      21.  With respect to defendant TURNER and Teresa Wright:

      a.  Defendant PELLICANO provided defendant TURNER with names and/or other personal identifying information of individuals whom defendant PELLICANO was investigating and as to whom he wished to obtain confidential and proprietary telephone company information from SBC.

1          b.    Defendant TURNER would access without

2    authorization, and in excess of his authorized access, and cause

3    Wright to access without authorization, and in excess of both his

4    and her authorized access, the SBC computer system in order,

5    under the guise of performing legitimate work-related duties, to

6    obtain confidential and proprietary telephone company information

7    for the use of defendant PELLICANO.

8          c.    Defendant TURNER solicited, and defendant

9    PELLICANO provided to defendant TURNER, payment for obtaining and

10   providing confidential and proprietary telephone company

11   information.  In particular, defendant PELLICANO made payments to

12   defendant TURNER by means of Pellicano Investigative Agency, Ltd.

13   business checks in at least the following amounts in return for

14   obtaining and providing confidential and proprietary telephone

15   company information:

16        Year        Minimum Payment

17        1997        $10,100

18        1998        $8,625

19        1999        $8,975

20        2000        $4,000

21        2001        $3,080

22        2002        $1,875

23   Defendant TURNER solicited and received from defendant PELLICANO

24   additional payments in cash in order to conceal these additional

25   payments received from defendant PELLICANO.

26        22.  Defendant PELLICANO provided the criminal history and

27   other law enforcement information received from defendant

28   ARNESON, Craig Stevens, and other corrupt public officials, and

1  the confidential and proprietary telephone company information
2  received from defendant TURNER and others, to the Enterprise's
3  clients in return for payment.

4      23.  In many instances, defendant PELLICANO used and sought
5  to use this illegally obtained information to facilitate further
6  criminal conduct to enrich the Enterprise, including threats,
7  blackmail, and illegal wiretapping directed against the
8  Enterprise's investigative targets.  In particular, at defendant
9  PELLICANO's direction, defendant TURNER and others known and
10 unknown to the Grand Jury used their expertise and access to
11 proprietary telephone company equipment to assist defendant
12 PELLICANO in using the illegally obtained information to
13 implement illegal wiretaps, which defendant PELLICANO
14 accomplished through the use of computer software and hardware
15 designed by Kevin Kachikian.

16     24.  Defendant PELLICANO provided the information obtained
17 by these and other legal and illegal means to the Enterprise's
18 clients, both known and unknown to the Grand Jury, who would use
19 the illegally obtained information provided by defendant
20 PELLICANO for their own purposes, including preparation for and
21 conduct of civil and criminal litigation.

22     25.  In return, defendant PELLICANO would secure payments
23 from these clients, which payments were used, in part, to promote
24 and expand the Enterprise's criminal and other operations.

25          V. CONDUCT OF THE AFFAIRS OF THE ENTERPRISE THROUGH
               A PATTERN OF RACKETEERING ACTIVITY
26

27     26.  Beginning on a date unknown to the Grand Jury and
28 continuing until in or around December 2002, within the Central

1  District of California and elsewhere, defendants ANTHONY

2  PELLICANO, MARK ARNESON, and RAYFORD EARL TURNER, together with

3  others known and unknown to the Grand Jury, being persons

4  employed by and associated with the Enterprise, which was engaged

5  in, and the activities of which affected, interstate commerce,

6  knowingly conducted and participated, directly and indirectly, in

7  the conduct of the affairs of that enterprise through a pattern

8  of racketeering activity as defined in Title 18, United States

9  Code, Sections 1961(1) and 1961(5), that is, through the

10  commission of Racketeering Acts One through Ninety-One as set

11  forth in paragraphs 27 through 36 below.

12                  Racketeering Acts One Through Sixty-Three

13                              (Wire Fraud)

14      27.  On or about each of the following dates, within the

15  Central District of California, in violation of Title 18, United

16  States Code, Sections 1343, 1346, and 2, defendants PELLICANO and

17  ARNESON, aiding and abetting each other, having knowingly and

18  with intent to defraud devised and participated in a scheme to

19  defraud and deprive the LAPD and the citizens of the City of Los

20  Angeles of their right to defendant ARNESON's honest services by

21  using defendant ARNESON's authority and official position as an

22  LAPD officer to enrich themselves by receiving payments in return

23  for obtaining and providing criminal history and other law

24  enforcement information, as described in paragraphs 19 and 22

25  through 25 of this Indictment, for the purpose of executing and

26  attempting to execute this scheme, transmitted and caused to be

27  transmitted by means of wire communication in interstate commerce

28  writings, signs, and signals, that is, computer transmissions

                                    12

from Los Angeles, California searching NCIC in Clarksburg, West
Virginia for criminal history and other law enforcement
information on the following persons:

| ACT | DATE | PERSON |
|---|---|---|
| 1 | January 11, 1999 | Jane Doe #4 in People v. John Gordon Jones, Los Angeles County Superior Court Case No. BA109907 |
| 2 | January 11, 1999 | Jane Doe #5 in People v. John Gordon Jones, Los Angeles County Superior Court Case No. BA109907 |
| 3 | January 20, 1999 | Garry Shandling |
| 4 | January 20, 1999 | Mariana Grant |
| 5 | January 25, 1999 | Jane Doe #6 in People v. John Gordon Jones, Los Angeles County Superior Court Case No. BA109907 |
| 6 | January 25, 1999 | Jane Doe #7 in People v. John Gordon Jones, Los Angeles County Superior Court Case No. BA109907 |
| 7 | February 9, 1999 | Jane Doe #8 in People v. John Gordon Jones, Los Angeles County Superior Court Case No. BA109907 |
| 8 | February 10, 1999 | James Nielsen |
| 9 | March 2, 1999 | Darcy LaPier |
| 10 | March 4, 1999 | Kevin Nealon |
| 11 | March 4, 1999 | Linda Nealon |
| 12 | March 4, 1999 | Linda Doucett |
| 13 | March 9, 1999 | Gavin DeBecker |
| 14 | March 15, 1999 | Bilal Baroody |
| 15 | May 4, 1999 | Ali Amghar |
| 16 | May 4, 1999 | Vanessa Etourneau |
| 17 | May 4, 1999 | Lea Dabany |
| 18 | May 4, 1999 | Felicia Fuller |
| 19 | May 4, 1999 | Bonita Jones |
| 20 | May 11, 1999 | Lilian Pinho |

| ACT | DATE | PERSON |
|-----|------|--------|
| 21 | July 30, 1999 | Monika Zsibrita |
| 22 | October 16, 1999 | Christopher Pair |
| 23 | October 16, 1999 | Suzanne Pair |
| 24 | October 16, 1999 | Michael Rosen |
| 25 | October 21, 1999 | Carol Rosen |
| 26 | May 15, 2000 | Kissandra Cohen |
| 27 | May 15, 2000 | Michael Cohen |
| 28 | August 2, 2000 | Peter Kuhns |
| 29 | August 2, 2000 | Erin Finn |
| 30 | November 22, 2000 | Laura Buddine |
| 31 | January 3, 2001 | Lisa Gores |
| 32 | January 3, 2001 | Thomas Gores |
| 33 | February 6, 2001 | Vincent Zenga |
| 34 | February 6, 2001 | Jerome Zenga |
| 35 | February 13, 2001 | Jessica Schutte |
| 36 | February 14, 2001 | Stacy Codikow |
| 37 | February 14, 2001 | Paul Durazzo |
| 38 | February 20, 2001 | Zorianna Kit |
| 39 | March 13, 2001 | Gregory Dovel |
| 40 | April 26, 2001 | Keith Carradine |
| 41 | April 26, 2001 | Hayley Dumond |
| 42 | August 24, 2001 | Sandra Rodriguez |
| 43 | August 24, 2001 | Ester Pina |
| 44 | August 24, 2001 | Mirella Lavorin |
| 45 | August 24, 2001 | Carrie Cagle |
| 46 | October 18, 2001 | George Kalta |
| 47 | February 19, 2002 | Kevin Templeton |
| 48 | March 15, 2002 | Patrick Theohar |
| 49 | March 18, 2002 | Laura Moreno |

| ACT | DATE | PERSON |
|---|---|---|
| 50 | March 18, 2002 | Marcus Moreno |
| 51 | April 3, 2002 | Pamela Miller |
| 52 | April 19, 2002 | Michael Kolesa |
| 53 | May 9, 2002 | Arthur Bernier |
| 54 | May 16, 2002 | James Casey |
| 55 | May 16, 2002 | Andrew Miller |
| 56 | May 16, 2002 | Anita Busch |
| 57 | May 16, 2002 | Bernard Weinraub |
| 58 | May 16, 2002 | Richard Miller |
| 59 | May 16, 2002 | Joyce Miller |
| 60 | September 4, 2002 | Timea Zsibrita |
| 61 | October 29, 2002 | Lucille Salter |
| 62 | October 29, 2002 | David Salter |
| 63 | October 29, 2002 | Cindy Salter |

### Racketeering Acts Sixty-Four Through Sixty-Five

#### (Wire Fraud)

28. On or about each of the following dates, within the Central District of California, in violation of Title 18, United States Code, Sections 1343, 1346, and 2, defendant PELLICANO and Craig Stevens, aiding and abetting each other, having knowingly and with intent to defraud devised and participated in a scheme to defraud and deprive the BHPD and the citizens of the City of Beverly Hills of their right to Stevens' honest services by using Stevens' authority and official position as a BHPD officer to enrich themselves by receiving payments in return for obtaining and providing criminal history and other law enforcement information, as described in paragraphs 20 and 22 through 25 of this Indictment, for the purpose of executing and attempting to

15

1 execute this scheme, transmitted and caused to be transmitted by

2 means of wire communication in interstate commerce writings,

3 signs, and signals, that is, computer transmissions from Beverly

4 Hills, California searching NCIC in Clarksburg, West Virginia for

5 criminal history and other law enforcement information on the

6 following persons:

| ACT | DATE | PERSON |
|-----|------|--------|
| 64 | November 9, 2001 | Max Russo |
| 65 | December 18, 2001 | Adam Sender |

Racketeering Acts Sixty-Six Through Seventy-Eight

(Identity Theft)

29. On or about each of the following dates, within the
Central District of California and elsewhere, in violation of
Title 18, United States Code, Section 1028(a)(7), defendants
PELLICANO and ARNESON knowingly transferred, possessed, and used,
and caused to be transferred, possessed, and used, without lawful
authority, the following means of identification, with the intent
to commit, and to aid and abet, and in connection with, an
unlawful activity that constituted a violation of Federal law,
namely, Title 18, United States Code, Section 1030(a)(4)
(computer fraud), and a felony under applicable State law,
namely, California Penal Code Section 502(c)(2) (unauthorized
access to computer data):

| ACT | DATE | MEANS OF IDENTIFICATION |
|-----|------|--------------------------|
| 66 | January 20, 1999 | Name of Warren Grant |
| 67 | January 21, 1999 | Name of Jane Doe #3 in People v. John Gordon Jones, Los Angeles County Superior Court Case No. BA109907 |

16

| ACT | DATE | MEANS OF IDENTIFICATION |
|---|---|---|
| 68 | January 22, 1999 | Name of Jane Doe #2 in _People v. John Gordon Jones_, Los Angeles County Superior Court Case No. BA109907 |
| 69 | February 9, 1999 | Name of Julie Westby |
| 70 | February 22, 1999 | Name of Jane Doe #1 in _People v. John Gordon Jones_, Los Angeles County Superior Court Case No. BA109907 |
| 71 | May 28, 1999 | Name of George Mueller |
| 72 | May 15, 2000 | Name of Mandy Cohen |
| 73 | August 18, 2000 | Name of Aaron Mestman |
| 74 | April 26, 2001 | Name of Jude Green |
| 75 | August 10, 2001 | Name of Bryan Lourd |
| 76 | August 10, 2001 | Name of Kevin Huvane |
| 77 | March 18, 2002 | Name of Loretta Moreno |
| 78 | March 21, 2002 | Name of Steven Roman |

### Racketeering Acts Seventy-Nine Through Eighty-Five

#### (Identity Theft)

30. On or about each of the following dates, within the Central District of California and elsewhere, in violation of Title 18, United States Code, Section 1028(a)(7), defendant PELLICANO knowingly transferred, possessed, and used, and caused to be transferred, possessed, and used, without lawful authority, the following means of identification, with the intent to commit, and to aid and abet, and in connection with, an unlawful activity that constituted a violation of Federal law, namely, Title 18, United States Code, Section 1030(a)(4) (computer fraud), and a

17

felony under applicable State law, namely, California Penal Code
Section 502(c)(2) (unauthorized access to computer data):

| ACT | DATE | MEANS OF IDENTIFICATION |
|---|---|---|
| 79 | November 3, 1999 | Name of Christopher Pair |
| 80 | November 3, 1999 | Name of Suzanne Pair |
| 81 | February 1, 2000 | Name of Ami Shafrir |
| 82 | April 4, 2001 | Name of Aaron Russo |
| 83 | April 4, 2001 | Name of Heidi Gregg |
| 84 | April 4, 2001 | Name of Maxwell Russo |
| 85 | April 4, 2001 | Name of Samuel Russo |

### Racketeering Acts Eighty-Six Through Ninety

### (Identity Theft)

31.  On or about each of the following dates, within the
Central District of California and elsewhere, in violation of
Title 18, United States Code, Section 1028(a)(7), defendants
PELLICANO and TURNER knowingly transferred, possessed, and used,
and caused to be transferred, possessed, and used, without lawful
authority, the following means of identification, with the intent
to commit, and to aid and abet, and in connection with, an
unlawful activity that constituted a violation of Federal law,
namely, Title 18, United States Code, Section 1030(a)(4)
(computer fraud), and a felony under applicable State law,
namely, California Penal Code Section 502(c)(2) (unauthorized
access to computer data):

| ACT | DATE | MEANS OF IDENTIFICATION |
|---|---|---|
| 86 | August 2, 2000 | Name and Telephone Number of Erin Finn |

18

| ACT | DATE | MEANS OF IDENTIFICATION |
|-----|------|-------------------------|
| 87 | February 13, 2001 | Name of and Telephone Number of Bo Zenga |
| 88 | April 2, 2001 | Name and Telephone Number of Heidi Gregg |
| 89 | February 12, 2001 | Name and Telephone Number of Johnny Friendly |
| 90 | May 16, 2002 | Name and Telephone Number of Anita Busch |

SCANNED

<u>Racketeering Act Ninety-One</u>

(Conspiracy to Commit Bribery)

32. Beginning on a date unknown to the Grand Jury and continuing until on or about November 21, 2002, in Los Angeles County, within the Central District of California, and elsewhere, in violation of California Penal Code § 182, defendants PELLICANO and ARNESON knowingly conspired and agreed with each other to:

a. knowingly give and offer bribes to an executive officer of the City of Los Angeles, with intent to influence that officer in respect to an act as such officer, to wit, the use of proprietary law enforcement databases to obtain criminal history and other law enforcement information for non-official use, in violation of California Penal Code § 67; and

b. knowingly ask, receive, and agree to receive a bribe to an executive officer of the City of Los Angeles, upon an agreement and understanding that the officer's action upon matters then pending and that might be brought before him in his official capacity, to wit, the use of proprietary law enforcement databases to obtain criminal history and other law enforcement

19

1  information for non-official use, would be influenced thereby, in

2  violation of California Penal Code § 68.

3      33.  The objects of the conspiracy were to be accomplished,

4  in substance, as follows:

5      34.  Defendant PELLICANO would and did pay bribes,

6  consisting of a $2500 monthly retainer and additional payments by

7  check and in cash, to defendant ARNESON to induce defendant

8  ARNESON to violate his LAPD oath of office and use his official

9  position to obtain, and to provide to defendant PELLICANO,

10  confidential law enforcement information.

11     35.  Defendant ARNESON would and did receive the bribes from

12  defendant PELLICANO and would and did agree to be influenced

13  thereby in responding favorably to defendant PELLICANO's requests

14  that defendant ARNESON violate his LAPD oath of office and use

15  his official position to obtain, and to provide to defendant

16  PELLICANO, confidential law enforcement information.

17     36.  On or about each of the following dates, within the

18  Central District of California and elsewhere, in furtherance of

19  the conspiracy and to accomplish the objects of the conspiracy,

20  defendants PELLICANO and ARNESON committed the following overt

21  acts, among others, which consisted of the giving by PELLICANO

22  and receiving by ARNESON of bribe payments in the following

23  amounts:

| OVERT ACT | DATE | AMOUNT |
|-----------|------|--------|
| 1 | February 10, 1997 | $2500 |
| 2 | May 5, 1997 | $2000 |
| 3 | June 4, 1997 | $375 |

SCANNED

| OVERT ACT | DATE | AMOUNT |
|---|---|---|
| 4 | August 28, 1997 | $1500 |
| 5 | November 25, 1997 | $2500 |
| 6 | February 5, 1998 | $2500 |
| 7 | February 26, 1998 | $2500 |
| 8 | March 24, 1998 | $2500 |
| 9 | April 17, 1998 | $2500 |
| 10 | May 14, 1998 | $2500 |
| 11 | June 18, 1998 | $4450 |
| 12 | July 23, 1998 | $2500 |
| 13 | August 14, 1998 | $4350 |
| 14 | August 27, 1998 | $2500 |
| 15 | September 15, 1998 | $6000 |
| 16 | October 9, 1998 | $5440.82 |
| 17 | November 3, 1998 | $2500 |
| 18 | November 23, 1998 | $3300 |
| 19 | December 17, 1998 | $2500 |
| 20 | December 31, 1998 | $1875 |
| 21 | March 18, 1999 | $2500 |
| 22 | March 23, 1999 | $3050 |
| 23 | April 21, 1999 | $2500 |
| 24 | May 4, 1999 | $5175 |
| 25 | May 12, 1999 | $1350 |
| 26 | May 26, 1999 | $2500 |
| 27 | June 29, 1999 | $2500 |
| 28 | July 23, 1999 | $2500 |
| 29 | August 2, 1999 | $1125 |
| 30 | August 20, 1999 | $3850 |
| 31 | September 21, 1999 | $2500 |
| 32 | October 26, 1999 | $1275 |

21

| OVERT ACT | DATE | AMOUNT |
|-----------|------|--------|
| 33 | November 16, 1999 | $2500 |
| 34 | December 17, 1999 | $2500 |
| 35 | January 25, 2000 | $2500 |
| 36 | February 25, 2000 | $3060 |
| 37 | March 24, 2000 | $2500 |
| 38 | April 20, 2000 | $2500 |
| 39 | May 18, 2000 | $2500 |
| 40 | June 16, 2000 | $2500 |
| 41 | July 20, 2000 | $2500 |
| 42 | August 8, 2000 | $2500 |
| 43 | September 15, 2000 | $2500 |
| 44 | September 25, 2000 | $1440 |
| 45 | October 23, 2000 | $2500 |
| 46 | November 23, 2000 | $2500 |
| 47 | December 13, 2000 | $5000. |
| 48 | January 10, 2001 | $4750 |
| 49 | February 22, 2001 | $2500 |
| 50 | March 20, 2001 | $2500 |
| 51 | April 20, 2001 | $2500 |
| 52 | May 25, 2001 | $2500 |
| 53 | June 17, 2001 | $2500 |
| 54 | July 12, 2001 | $2500 |
| 55 | August 9, 2001 | $2500 |
| 56 | September 14, 2001 | $2500 |
| 57 | October 16, 2001 | $2500 |
| 58 | November 8, 2001 | $2500 |
| 59 | December 13, 2001 | $2500 |
| 60 | January 11, 2002 | $2500 |
| 61 | February 8, 2002 | $2500 |

| OVERT ACT | DATE | AMOUNT |
|-----------|------|--------|
| 62 | March 14, 2002 | $2500 |
| 63 | April 9, 2002 | $2500 |
| 64 | May 10, 2002 | $2500 |
| 65 | June 13, 2002 | $2500 |
| 66 | July 11, 2002 | $2500 |
| 67 | August 12, 2002 | $2500 |
| 68 | September 16, 2002 | $2500 |
| 69 | October 10, 2002 | $2500 |
| 70 | November 7, 2002 | $2500 |

COUNT TWO

[18 U.S.C. § 1962(d)]

[Racketeering Conspiracy]

[Defendants PELLICANO, ARNESON, and TURNER]

37.  The Grand Jury hereby realleges Paragraphs 1 through 25
and 27 through 36 of this Indictment as though fully set forth
herein.

38.  Beginning on a date unknown to the Grand Jury and
continuing until in and about December 2002, in the Central
District of California and elsewhere, defendants ANTHONY
PELLICANO, MARK ARNESON, and RAYFORD EARL TURNER, together with
other individuals known and unknown to the Grand Jury, and the
Pellicano Investigative Agency, Ltd., together with other legal
entities known and unknown to the Grand Jury, knowingly and
intentionally conspired to violate Title 18, United States Code,
Section 1962(c), that is, to conduct and participate, directly
and indirectly, in the conduct of the affairs of the Enterprise,
as defined in paragraph 14 of this Indictment, through a pattern
of racketeering activity, as defined in Title 18, United States
Code, Sections 1961(1) and 1961(5), namely, the acts set forth in
paragraphs 27 through 36 of this Indictment, with each defendant
agreeing that a conspirator would commit at least two acts of
racketeering activity in the conduct of the affairs of the
Enterprise.

COUNTS THREE THROUGH THIRTY-THREE

[18 U.S.C. §§ 1343, 1346, 2]

[Honest Services Wire Fraud]

[Defendants PELLICANO and ARNESON]

39. The Grand Jury hereby realleges Paragraphs 1-2, 6-7, 9-10, 19 and 22-25 of this Indictment as though fully set forth herein.

40. On or about each of the following dates, within the Central District of California, defendants ANTHONY PELLICANO and MARK ARNESON, and others known and unknown to the Grand Jury, aiding and abetting each other, having knowingly and with intent to defraud devised and participated in a scheme to defraud and deprive the LAPD and the citizens of the City of Los Angeles of their right to defendant ARNESON's honest services by using defendant ARNESON's authority and official position as an LAPD officer to enrich themselves by receiving payments in return for obtaining and providing criminal history and other law enforcement information, as described in paragraphs 19 and 22-25 of this Indictment, for the purpose of executing and attempting to execute this scheme, transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, signs, and signals, that is, computer transmissions from Los Angeles, California searching NCIC in Clarksburg, West Virginia for criminal history and other law enforcement information on the following persons:

| COUNT | DATE | PERSON |
|-------|------|--------|
| 3 | February 6, 2001 | Vincent Zenga |

| COUNT | DATE | PERSON |
|-------|------|--------|
| 4 | February 6, 2001 | Jerome Zenga |
| 5 | February 13, 2001 | Jessica Schutte |
| 6 | February 14, 2001 | Stacy Codikow |
| 7 | February 14, 2001 | Paul Durazzo |
| 8 | February 20, 2001 | Zorianna Kit |
| 9 | March 13, 2001 | Gregory Dovel |
| 10 | April 26, 2001 | Keith Carradine |
| 11 | April 26, 2001 | Hayley Dumond |
| 12 | August 24, 2001 | Sandra Rodriguez |
| 13 | August 24, 2001 | Ester Pina |
| 14 | August 24, 2001 | Mirella Lavorin |
| 15 | August 24, 2001 | Carrie Cagle |
| 16 | October 18, 2001 | George Kalta |
| 17 | February 19, 2002 | Kevin Templeton |
| 18 | March 15, 2002 | Patrick Theohar |
| 19 | March 18, 2002 | Laura Moreno |
| 20 | March 18, 2002 | Marcus Moreno |
| 21 | April 3, 2002 | Pamela Miller |
| 22 | April 19, 2002 | Michael Kolesa |
| 23 | May 9, 2002 | Arthur Bernier |
| 24 | May 16, 2002 | James Casey |
| 25 | May 16, 2002 | Andrew Miller |
| 26 | May 16, 2002 | Anita Busch |
| 27 | May 16, 2002 | Bernard Weinraub |
| 28 | May 16, 2002 | Richard Miller |
| 29 | May 16, 2002 | Joyce Miller |
| 30 | September 4, 2002 | Timea Zsibrita |
| 31 | October 29, 2002 | Lucille Salter |
| 32 | October 29, 2002 | David Salter |

| COUNT | DATE | PERSON |
|-------|------|--------|
| 33 | October 29, 2002 | Cindy Salter |

SCANNED

COUNTS THIRTY-FOUR THROUGH SIXTY-FOUR

[18 U.S.C. § 1030(a)(2)(B), (c)(2)(B)(i); 18 U.S.C. § 2]

[Unauthorized Computer Access of United States Agency

Information]

[Defendants PELLICANO and ARNESON]

41.  The Grand Jury hereby realleges Paragraphs 1-2, 6-7, 9-10, 19 and 22-25 of this Indictment as though fully set forth herein.

42.  On or about each of the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant MARK ARNESON, aided and abetted by defendant ANTHONY PELLICANO, intentionally accessed a computer without authorization and in excess of his authorized access and thereby obtained information from a department and agency of the United States for purposes of private financial gain, that is, defendant ARNESON, aided and abetted by defendant PELLICANO, accessed and caused to be accessed the LAPD computer system without authorization and in excess of his authorized access to obtain criminal history and other law enforcement information for the persons named below from the NCIC database maintained by the Federal Bureau of Investigation, an agency of the United States Government, for purposes of obtaining payment from defendant PELLICANO:

| COUNT | DATE | PERSON |
|-------|------|--------|
| 34 | February 6, 2001 | Vincent Zenga |
| 35 | February 6, 2001 | Jerome Zenga |
| 36 | February 13, 2001 | Jessica Schutte |

| COUNT | DATE | PERSON |
|-------|------|--------|
| 37 | February 14, 2001 | Stacy Codikow |
| 38 | February 14, 2001 | Paul Durazzo |
| 39 | February 20, 2001 | Zorianna Kit |
| 40 | March 13, 2001 | Gregory Dovel |
| 41 | April 26, 2001 | Keith Carradine |
| 42 | April 26, 2001 | Hayley Dumond |
| 43 | August 24, 2001 | Sandra Rodriguez |
| 44 | August 24, 2001 | Ester Pina |
| 45 | August 24, 2001 | Mirella Lavorin |
| 46 | August 24, 2001 | Carrie Cagle |
| 47 | October 18, 2001 | George Kalta |
| 48 | February 19, 2002 | Kevin Templeton |
| 49 | March 15, 2002 | Patrick Theohar |
| 50 | March 18, 2002 | Laura Moreno |
| 51 | March 18, 2002 | Marcus Moreno |
| 52 | April 3, 2002 | Pamela Miller |
| 53 | April 19, 2002 | Michael Kolesa |
| 54 | May 9, 2002 | Arthur Bernier |
| 55 | May 16, 2002 | James Casey |
| 56 | May 16, 2002 | Andrew Miller |
| 57 | May 16, 2002 | Anita Busch |
| 58 | May 16, 2002 | Bernard Weinraub |
| 59 | May 16, 2002 | Richard Miller |
| 60 | May 16, 2002 | Joyce Miller |
| 61 | September 4, 2002 | Timea Zsibrita |
| 62 | October 29, 2002 | Lucille Salter |
| 63 | October 29, 2002 | David Salter |
| 64 | October 29, 2002 | Cindy Salter |

29

SCANNED

COUNTS SIXTY-FIVE THROUGH SIXTY-NINE

[18 U.S.C. §§ 1028(a)(7), 2]

[Identity Theft]

[Defendants PELLICANO and ARNESON]

43. The Grand Jury hereby realleges Paragraphs 1-2, 6-7, 9-10, 19 and 22-25 of this Indictment as though fully set forth herein.

44. On or about each of the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants ANTHONY PELLICANO and MARK ARNESON knowingly transferred, possessed, and used, and caused to be transferred, possessed, and used, without lawful authority, the following means of identification of another person with the intent to commit, and to aid and abet, and in connection with, an unlawful activity that constituted a violation of Federal law, to wit, Title 18, United States Code, Section 1030(a)(4) (computer fraud), and a felony under applicable State law, to wit, California Penal Code Section 502(c)(2) (unauthorized access to computer data):

| COUNT | DATE | MEANS OF IDENTIFICATION |
|-------|------|-------------------------|
| 65 | April 26, 2001 | Name of Jude Green |
| 66 | August 10, 2001 | Name of Bryan Lourd |
| 67 | August 10, 2001 | Name of Kevin Huvane |
| 68 | March 18, 2002 | Name of Loretta Moreno |
| 69 | March 21, 2002 | Name of Steven Roman |

SCANNED

COUNTS SEVENTY THROUGH SEVENTY-FOUR

[18 U.S.C. §§ 1030(a)(4), 2]

[Computer Fraud]

[Defendants PELLICANO and ARNESON]

45.  The Grand Jury hereby realleges Paragraphs 1-2, 6-7, 9-10, 19 and 22-25 of this Indictment as though fully set forth herein.

46.  On or about each of the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant MARK ARNESON, aided and abetted by defendant ANTHONY PELLICANO, knowingly and with intent to defraud, accessed without authorization and in excess of his authorized access a protected computer, namely, a computer in the LAPD computer system, and by means of accessing the protected computer furthered the intended fraud and obtained something of value, namely, DMV information for the following persons:

| COUNT | DATE | PERSON |
|---|---|---|
| 70 | April 26, 2001 | Jude Green |
| 71 | August 10, 2001 | Bryan Lourd |
| 72 | August 10, 2001 | Kevin Huvane |
| 73 | March 18, 2002 | Loretta Moreno |
| 74 | March 21, 2002 | Steven Roman |

31

SCANNED

COUNTS SEVENTY-FIVE THROUGH SEVENTY-SIX

[18 U.S.C. § 1343, 1346, 2]

[Honest Services Wire Fraud]

[Defendant PELLICANO]

47.   The Grand Jury hereby realleges Paragraphs 1, 4, 8-10, 20, and 22-25 of this Indictment as though fully set forth herein.

48.   On or about each of the following dates, within the Central District of California, defendant ANTHONY PELLICANO and Craig Stevens, and others known and unknown to the Grand Jury, aiding and abetting each other, having knowingly and with intent to defraud devised and participated in a scheme to defraud and deprive the BHPD and the citizens of the City of Beverly Hills of their right to Stevens' honest services by using Stevens' authority and official position as a BHPD officer to enrich themselves by receiving payments in return for obtaining and providing criminal history and other law enforcement information, as described in paragraphs 20 and 22-25 of this Indictment, for the purpose of executing and attempting to execute this scheme, transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, signs, and signals, that is, computer transmissions from Los Angeles, California searching NCIC in Clarksburg, West Virginia

for criminal history and other law enforcement information on the
following persons:

| COUNT | DATE | PERSON |
|-------|------|--------|
| 75 | November 9, 2001 | Max Russo |
| 76 | December 18, 2001 | Adam Sender |

COUNTS SEVENTY-SEVEN THROUGH SEVENTY-EIGHT

[18 U.S.C. § 1030(a)(2)(B), (c)(2)(B)(i); 18 U.S.C. § 2]

[Unauthorized Computer Access of United States Agency

Information]

[Defendant PELLICANO]

49. The Grand Jury hereby realleges Paragraphs 1, 4, 8-10, 20, and 22-25 of this Indictment as though fully set forth herein.

50. On or about each of the following dates, in Los Angeles County, within the Central District of California and elsewhere, defendant ANTHONY PELLICANO aided and abetted Craig Stevens to intentionally access a computer without authorization and in excess of his authorized access and thereby obtain information from a department and agency of the United States for purposes of private financial gain, that is, defendant PELLICANO aided and abetted Craig Stevens to access and cause to be accessed the BHPD computer system without authorization and in excess of his authorized access to obtain criminal history and other law enforcement information for the persons named below from the NCIC database maintained by the Federal Bureau of Investigation, an agency of the United States Government, for purposes of obtaining payment from defendant PELLICANO:

| COUNT | DATE | PERSON |
|-------|------|--------|
| 77 | November 9, 2001 | Max Russo |
| 78 | December 18, 2001 | Adam Sender |

34

SCANNED

COUNTS SEVENTY-NINE THROUGH EIGHTY-TWO

[18 U.S.C. §§ 1028(a)(7), 2]

[Identity Theft]

[Defendant PELLICANO]

51.   The Grand Jury hereby realleges Paragraphs 1, 4, 8-10, 20, and 22-25 of this Indictment as though fully set forth herein.

52.   On or about each of the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANTHONY PELLICANO knowingly transferred, possessed, and used, and caused to be transferred, possessed, and used, without lawful authority, the following means of identification of another person with the intent to commit, and to aid and abet, and in connection with, an unlawful activity that constituted a violation of Federal law, to wit, Title 18, United States Code, Section 1030(a)(4) (computer fraud), and a felony under applicable State law, to wit, California Penal Code Section 502(c)(2) (unauthorized access to computer data):

| COUNT | DATE | MEANS OF IDENTIFICATION |
|---|---|---|
| 79 | April 4, 2001 | Name of Aaron Russo |
| 80 | April 4, 2001 | Name of Heidi Gregg |
| 81 | April 4, 2001 | Name of Maxwell Russo |
| 82 | April 4, 2001 | Name of Samuel Russo |

COUNTS EIGHTY-THREE THROUGH EIGHTY-SIX

[18 U.S.C. §§ 1030(a)(4), 2]

[Computer Fraud]

[Defendant PELLICANO]

53.  The Grand Jury hereby realleges Paragraphs 1, 4, 8-10, 20, and 22-25 of this Indictment as though fully set forth herein.

54.  On or about each of the following dates, in Los Angeles County, within the Central District of California and elsewhere, defendant ANTHONY PELLICANO aided and abetted Craig Stevens to knowingly and with intent to defraud access without authorization and in excess of his authorized access a protected computer, namely, a computer in the BHPD computer system, and by means of accessing the protected computer further the intended fraud and obtain something of value, namely, DMV information for the following persons:

| COUNT | DATE | MEANS OF IDENTIFICATION |
|-------|------|-------------------------|
| 83 | April 4, 2001 | Name of Aaron Russo |
| 84 | April 4, 2001 | Name of Heidi Gregg |
| 85 | April 4, 2001 | Name of Maxwell Russo |
| 86 | April 4, 2001 | Name of Samuel Russo |

COUNTS EIGHTY-SEVEN THROUGH NINETY

[18 U.S.C. §§ 1028(a)(7), 2]

[Identity Theft]

[Defendants PELLICANO and TURNER]

55. The Grand Jury hereby realleges Paragraphs 1, 3, 5, 11-13, and 21-25 of this Indictment as though fully set forth herein.

56. On or about each of the following dates, in Los Angeles County, within the Central District of California and elsewhere, defendants ANTHONY PELLICANO and RAYFORD EARL TURNER knowingly transferred, possessed, and used, and caused to be transferred, possessed, and used, without lawful authority, a means of identification of another person with the intent to commit, and to aid and abet, and in connection with, an unlawful activity that constituted a violation of Federal law, to wit, Title 18, United States Code, Section 1030(a)(4) (computer fraud), and a felony under applicable State law, to wit, California Penal Code Section 502(c)(2) (unauthorized access to computer data):

| COUNT | DATE | MEANS OF IDENTIFICATION |
|-------|------|--------------------------|
| 87 | February 13 2001 | Name of and Telephone Number of Bo Zenga |
| 88 | April 2, 2001 | Name and Telephone Number of Heidi Gregg |
| 89 | February 12, 2001 | Name and Telephone Number of Johnny Friendly |
| 90 | May 16, 2002 | Name and Telephone Number of Anita Busch |

COUNTS NINETY-ONE THROUGH NINETY-FOUR

[18 U.S.C. §§ 1030(a)(4), 2]

[Computer Fraud]

[Defendants PELLICANO and TURNER]

57. The Grand Jury hereby realleges Paragraphs 1, 3, 5, 11-13, and 21-25 of this Indictment as though fully set forth herein.

58. On or about each of the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants ANTHONY PELLICANO and RAYFORD EARL TURNER aided and abetted Teresa Wright to knowingly and with intent to defraud access without authorization and in excess of her authorized access a protected computer, namely, a Dell Latitude notebook computer, model number CP1A366XT, serial number VK70N, located at SBC, 1010 Wilshire Boulevard, Room 800, Los Angeles, California 90017, and by means of accessing the protected computer further the intended fraud and obtain something of value, namely, telephone subscriber information for the following SBC customers:

| COUNT | DATE | SBC CUSTOMER |
|-------|------|--------------|
| 91 | February 13 2001 | Bo Zenga |
| 92 | April 2, 2001 | Heidi Gregg |
| 93 | February 12, 2001 | Johnny Friendly |
| 94 | May 16, 2002 | Anita Busch |

SCANNED

COUNT NINETY-FIVE

[18 U.S.C. § 371]

[Conspiracy]

[Defendants PELLICANO, TURNER, and KACHIKIAN]

A.    OBJECTS OF THE CONSPIRACY

    59.  Beginning on a date unknown to the Grand Jury and
continuing until on or about November 21, 2002, in Los Angeles
County, within the Central District of California, and elsewhere,
defendants ANTHONY PELLICANO, RAYFORD EARL TURNER, and KEVIN
KACHIKIAN, and others known and unknown to the Grand Jury,
knowingly conspired and agreed with each other to:

        a.    intentionally intercept, endeavor to intercept,
and procure other persons to intercept and endeavor to intercept
wire communications, in violation of Title 18, United States
Code, Section 2511(1)(a); and

        b.    intentionally use, and endeavor to use, the
contents of wire communications, knowing and having reason to
know that the information was obtained through the interception
of wire communications, in violation of Title 18, United States
Code, Section 2511(1)(d).

B.    MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
      ACCOMPLISHED

    60.  The objects of the conspiracy were to be accomplished,
in substance, as follows:

    61.  At defendant PELLICANO's direction, defendant KACHIKIAN
would and did develop, implement, and maintain a computer
software program to facilitate the illegal interception of
telephone calls.

39

62. Defendant PELLICANO would and did permit himself to be retained by individuals and entities known and unknown to the Grand Jury ("the clients") for the purpose of implementing illegal wiretaps of individuals, including the clients' litigative opponents.

63. At defendant PELLICANO's direction, defendant TURNER, a field technician for telephone company SBC (formerly Pacific Bell), would and did access, and cause others known and unknown to the Grand Jury to access, proprietary telephone company databases and equipment to implement the illegal wiretaps.

64. Defendant PELLICANO would and did furnish the computer hardware and software used to implement the illegal wiretaps, including the hardware and software designed by defendant KACHIKIAN, review the contents of intercepted conversations, and provide the contents of those conversations to the clients.

65. Defendant PELLICANO and the clients would and did use the information for their own purposes, including securing a tactical advantage in litigation by learning their opponents' plans, strategies, perceived strengths and weaknesses, settlement positions, and other confidential information.

C. OVERT ACTS

66. On or about each of the following dates, within the Central District of California and elsewhere, in furtherance of the conspiracy and to accomplish the objects of the conspiracy, defendants PELLICANO, TURNER, and KACHIKIAN, and others known and unknown to the Grand Jury, committed the following overt acts, among others:

40

67. Beginning in or around 1995, defendant KACHIKIAN began developing for defendant PELLICANO "Telesleuth," a computer software program to be used for the purpose of intercepting telephonic communications.

68. On or about March 11, 1996, defendant PELLICANO requisitioned engineering services necessary for the completion of hardware to be used in connection with the "Telesleuth" wiretapping program.

69. From in or around January 1997 to in or around May 2002, defendant PELLICANO paid defendant TURNER at least $36,655 for the purpose of obtaining proprietary telephone company information and facilitating illegal wiretaps.

70. In or around May 1997, defendants PELLICANO and TURNER used the "Telesleuth" program to intercept telephone communications of Robert Maguire.

71. Between in or around September 1997 and in or around March 1998, defendant PELLICANO used the "Telesleuth" program to intercept telephone communications of Mark Hughes.

72. In or around January 1998, defendant PELLICANO used the "Telesleuth" program to intercept telephone communications of James Orr.

73. In or around October 1999, defendant PELLICANO used the "Telesleuth" program to intercept telephone communications of Michael Rosen.

74. On or about July 19, 2000, defendants PELLICANO and KACHIKIAN requisitioned Amuneal Manufacturing Corp. to create new metal housings for the circuit boards used in connection with the "Telesleuth" wiretapping program.

41

SCANNED

75.   In or around July 2000, defendant PELLICANO used the "Telesleuth" program to intercept telephone communications of Kissandra Cohen.

76.   On or about August 2, 2000, defendant TURNER caused an inquiry to be made of a proprietary SBC computer database to obtain telephone information regarding Erin Finn.

77.   Between on or about August 2, 2000, and on or about November 6, 2000, defendant PELLICANO used the "Telesleuth" program to intercept telephone communications of Erin Finn.

78.   Between in or around August 2000 and in or around December 2000, defendant PELLICANO used the "Telesleuth" program to intercept telephone communications of Ami Shafrir.

79.   In or around January 2001, defendant PELLICANO used the "Telesleuth" program to intercept telephone communications of Lisa Gores.

80.   Between in or around January 2001 and in or around June 2001, defendant PELLICANO used the "Telesleuth" program to intercept telephone communications of Laura Buddine.

81.   On or about February 13, 2001, defendant TURNER caused an inquiry to be made of a proprietary SBC computer database to obtain telephone information regarding Vincent Bo Zenga.

82.   Between in or around February 2001, and in or around April 2001, defendant PELLICANO used the "Telesleuth" program to intercept telephone communications of Vincent Bo Zenga.

83.   On or about April 2, 2001, defendant TURNER caused an inquiry to be made of a proprietary SBC computer database to obtain telephone information regarding Aaron Russo.

SCANNED

84. In or around April 2001, defendant PELLICANO used the "Telesleuth" program to intercept telephone communications of Aaron Russo.

85. In or around May 2001, defendant PELLICANO used the "Telesleuth" program to intercept telephone communications of Keith Carradine.

86. On or about October 17, 2001, unindicted coconspirator George Kalta paid defendant PELLICANO $25,000 to intercept telephone communications of Laura Moreno.

87. Between on or about February 8, 2002, and on or about April 30, 2002, defendant KACHIKIAN charged defendant PELLICANO more than $13,425 for continued work on the "Telesleuth" hardware and software.

88. On or about February 12, 2002, defendant TURNER caused an inquiry to be made of a proprietary SBC computer database to obtain telephone information regarding "Johnny Friendly."

89. In or around February 2002, defendant PELLICANO used the "Telesleuth" program to intercept telephone communications of Sylvester Stallone.

90. On or about April 16, 2002, defendant TURNER caused an inquiry to be made of a proprietary SBC computer database to obtain telephone information regarding Anita Busch.

91. Beginning on a date unknown to the Grand Jury, and continuing to on or about November 5, 2002, defendant PELLICANO used the "Telesleuth" program to intercept telephone communications of Anita Busch.

43

COUNT NINETY-SIX

[18 U.S.C. §§ 2511(1)(a), 2]

[Interception of Wire Communications]

[Defendants PELLICANO, TURNER, KACHIKIAN, and PFEIFER]

92.  Beginning on or about August 2, 2000, and continuing until at least on or about November 6, 2000, in Los Angeles County, within the Central District of California, defendants ANTHONY PELLICANO, RAYFORD EARL TURNER, and KEVIN KACHIKIAN, aided and abetted by defendant ROBERT PFEIFER, intentionally intercepted, endeavored to intercept, and procured another person to intercept and endeavor to intercept, wire communications of Erin Finn.

44

COUNT NINETY-SEVEN

[18 U.S.C. §§ 2511(1)(a), 2]

[Interception of Wire Communications]

[Defendants PELLICANO, TURNER, KACHIKIAN, ABNER NICHERIE, and

DANIEL NICHERIE]

93.  Beginning in or around August 2000 and continuing until in or around December 2000, in Los Angeles County, within the Central District of California, defendants ANTHONY PELLICANO, RAYFORD EARL TURNER, and KEVIN KACHIKIAN, aided and abetted by defendants ABNER NICHERIE and DANIEL NICHERIE, intentionally intercepted, endeavored to intercept, and procured another person to intercept and endeavor to intercept, wire communications of Ami Shafrir.

COUNT NINETY-EIGHT

[18 U.S.C. § 2511(1)(a)]

[Interception of Wire Communications]

[Defendants PELLICANO, TURNER, and KACHIKIAN]

94.   On or about January 8, 2001, in Los Angeles County, within the Central District of California, defendants ANTHONY PELLICANO, RAYFORD EARL TURNER, and KEVIN KACHIKIAN intentionally intercepted, endeavored to intercept, and procured another person to intercept and endeavor to intercept, wire communications of Lisa Gores.

COUNT NINETY-NINE

[18 U.S.C. § 2511(1)(a)]

[Interception of Wire Communications]

[Defendants PELLICANO, TURNER, and KACHIKIAN]

95.    Between in or around January 2001 and in or around June 2001, in Los Angeles County, within the Central District of California, defendants ANTHONY PELLICANO, RAYFORD EARL TURNER, and KEVIN KACHIKIAN intentionally intercepted, endeavored to intercept, and procured another person to intercept and endeavor to intercept, wire communications of Laura Buddine.

COUNT ONE HUNDRED

[18 U.S.C. § 2511(1)(a)]

[Interception of Wire Communications]

[Defendants PELLICANO, TURNER, and KACHIKIAN]

96. Between in or around February 2001 and in or around April 2001, in Los Angeles County, within the Central District of California, defendants ANTHONY PELLICANO, RAYFORD EARL TURNER, and KEVIN KACHIKIAN intentionally intercepted, endeavored to intercept, and procured another person to intercept and endeavor to intercept, wire communications of Vincent Bo Zenga.

COUNT ONE HUNDRED AND ONE

[18 U.S.C. § 2511(1)(a)]

[Interception of Wire Communications]

[Defendants PELLICANO, TURNER, and KACHIKIAN]

97. In or around April 2001, in Los Angeles County, within
the Central District of California, defendants ANTHONY PELLICANO,
RAYFORD EARL TURNER, and KEVIN KACHIKIAN intentionally
intercepted, endeavored to intercept, and procured another person
to intercept and endeavor to intercept, wire communications of
Aaron Russo.

COUNT ONE HUNDRED AND TWO

[18 U.S.C. § 2511(1)(a)]

[Interception of Wire Communications]

[Defendants PELLICANO, TURNER, and KACHIKIAN]

98.   In or around May 2001, in Los Angeles County, within the Central District of California, defendants ANTHONY PELLICANO, RAYFORD EARL TURNER, and KEVIN KACHIKIAN intentionally intercepted, endeavored to intercept, and procured another person to intercept and endeavor to intercept, wire communications of Keith Carradine.

COUNT ONE HUNDRED AND THREE

[18 U.S.C. § 2511(1)(a)]

[Interception of Wire Communications]

[Defendants PELLICANO, TURNER, and KACHIKIAN]

99. In or around February 2002, in Los Angeles County, within the Central District of California, defendants ANTHONY PELLICANO, RAYFORD EARL TURNER, and KEVIN KACHIKIAN intentionally intercepted, endeavored to intercept, and procured another person to intercept and endeavor to intercept, wire communications of Sylvester Stallone.

COUNT ONE HUNDRED AND FOUR

[18 U.S.C. § 2511(1)(a)]

[Interception of Wire Communications]

[Defendants PELLICANO, TURNER, and KACHIKIAN]

100. Beginning on a date unknown to the Grand Jury, and continuing to on or about November 5, 2002, in Los Angeles County, within the Central District of California, defendants ANTHONY PELLICANO, RAYFORD EARL TURNER, and KEVIN KACHIKIAN intentionally intercepted, endeavored to intercept, and procured another person to intercept and endeavor to intercept, wire communications of Anita Busch.

COUNT ONE HUNDRED AND FIVE

[18 U.S.C. §§ 2512(1)(b), 2]

[Possession of Wiretapping Device]

[Defendants PELLICANO and KACHIKIAN]

101. From in or around July 2000 to on or about November 21, 2002, in Los Angeles County, within the Central District of California, defendants ANTHONY PELLICANO and KEVIN KACHIKIAN intentionally manufactured, assembled, and possessed, and caused to be manufactured, assembled, and possessed, an electronic, mechanical, and other device, knowing and having reason to know that the design of such device rendered it primarily useful for the purpose of the surreptitious interception of wire communications, and that such device and any component thereof had been sent through the mail and transported in interstate and foreign commerce.

COUNT ONE HUNDRED AND SIX

[18 U.S.C. § 1001(a)(2)]

[False Statements]

[Defendant ARNESON]

102. On or about July 9, 2003, in Los Angeles County, within the Central District of California, in a matter within the jurisdiction of the United States Department of Justice, Federal Bureau of Investigation ("FBI"), an agency of the executive branch of the Government of the United States, defendant MARK ARNESON knowingly and willfully made a materially false, fictitious, and fraudulent statement, in that, during an interview conducted by the FBI, defendant ARNESON claimed that he had conducted inquiries of law enforcement databases on the name "Anita Busch" based on his belief that Anita Busch was involved in gambling or other organized crime activities, when in fact, as defendant ARNESON well knew, he had conducted those inquiries at the behest of Anthony Pellicano and for no legitimate law enforcement interest.

COUNT ONE HUNDRED AND SEVEN

[18 U.S.C. § 1001(a)(2)]

[False Statements]

[Defendant TURNER]

103. On or about January 28, 2003, in Los Angeles County, within the Central District of California, in a matter within the jurisdiction of the United States Department of Justice, Federal Bureau of Investigation ("FBI"), an agency of the executive branch of the Government of the United States, defendant RAYFORD EARL TURNER knowingly and willfully made a materially false, fictitious, and fraudulent statement, in that, during an interview conducted by the FBI, defendant TURNER claimed that he had never assisted Anthony Pellicano in wiretapping telephones or making proprietary telephone company information available to Pellicano, when in fact, as defendant TURNER well knew, he had regularly assisted Pellicano in wiretapping telephones and in making proprietary telephone company information available to Pellicano.

SCANNED

COUNT ONE HUNDRED AND EIGHT

[18 U.S.C. § 1512(b)(3)]

[Witness Tampering]

[Defendant PFEIFER]

104. On or about June 23, 2003, in Los Angeles County, within the Central District of California, defendant ROBERT PFEIFFER knowingly used intimidation, threatened, and corruptly persuaded witness Erin Finn, and attempted to do so, and engaged in misleading conduct toward that witness, with intent to hinder, delay, and prevent the communication to a law enforcement officer of information relating to the commission and possible commission of a Federal offense.

COUNT ONE HUNDRED AND NINE

[18 U.S.C. § 1512(c)(1)]

[Destruction of Evidence]

[Defendant KACHIKIAN]

105. In or around December 2002, in Los Angeles County, within the Central District of California, defendant KEVIN KACHIKIAN corruptly altered, destroyed, mutilated, and concealed a record, document, and other object, namely, computer files, hardware, and software relating to the "Telesleuth" computer program, and attempted to do so, with the intent to impair the object's integrity and availability for use in an official proceeding.

COUNT ONE HUNDRED AND TEN

[18 U.S.C. § 1963]

[RICO Forfeiture]

[Defendants PELLICANO, ARNESON, and TURNER]

106. The allegations contained in Counts One and Two of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of any defendant's conviction under Counts One and Two of this Indictment.

107. Defendants ANTHONY PELLICANO, MARK ARNESON, and RAYFORD EARL TURNER:

a.    have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1); and

b.    have property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

108. The interests of defendants PELLICANO, ARNESON, and TURNER subject to forfeiture to the United States pursuant to

Title 18, United States Code, Section 1963(a)(1) and (3), include
but are not limited to at least $1,919,250.

109. If any of the property described in the immediately
preceding paragraph, as a result of any act or omission of a
defendant --

        a.   cannot be located upon the exercise of due
            diligence;

        b.   has been transferred or sold to, or deposited
            with, a third party;

        c.   has been placed beyond the jurisdiction of the
            court;

        d.   has been substantially diminished in value;  or

        e.   has been commingled with other property which
            cannot be divided without difficulty,

the court shall order the forfeiture of any other property of the
defendants up to the value of any property set forth in paragraph
142 above.

110. The above-named defendants, and each of them, are
jointly and severally liable for the forfeiture obligations as
alleged above.

59

1    111. All pursuant to Title 18, United States Code, Section

2  1963.

3

4                                    A TRUE BILL

5

6                                    Foreperson

7

8  GEORGE S. CARDONA
   Acting United States Attorney
9

10
   THOMAS P. O'BRIEN
11 Assistant United States Attorney
   Chief, Criminal Division
12

13 DANIEL A. SAUNDERS
   KEVIN M. LALLY
14 Assistant United States Attorneys
   Organized Crime & Terrorism Section
15

16

17

18

19

20

21

22

23

24

25

26

27

28

                        60