EAGAN AVENATTI, LLP
JASON M. FRANK, Bar No. 190957
jfrank@eaganavenatti.com
AHMED IBRAHIM, Bar No. 238739
aibrahim@eaganavenatti.com
450 Newport Center Drive
Second Floor
Newport Beach, CA 92660
Tel:   (949) 706-7000
Fax:   (949) 706-7050

AT&T SERVICES, INC. LEGAL DEPARTMENT
GLEAM O. DAVIS, Bar No. 123047
gd2521@att.com
1150 S. Olive Street, Suite 2850
Los Angeles, CA 90015
Tel:   (213) 743-6710
Fax:   (213) 748-1230

Attorneys for Non-Party PACIFIC BELL TELEPHONE
COMPANY (d/b/a AT&T California)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>        vs.<br><br>ANTHONY PELLICANO, et al.,<br><br>                 Defendants. | Case No.  CR 05-01046(c)-DSF<br><br>ASSIGNED FOR ALL PURPOSES TO:<br>Honorable Dale S. Fischer<br><br>**PACIFIC BELL TELEPHONE COMPANY'S MOTION FOR ORDER RELEASING GRAND JURY TESTIMONY OF ERIN FINN**<br><br>[*Declaration of Jason M. Frank, Application to File Under Seal, Notice of Manual Filing, Table of Contents and [Proposed] Order concurrently filed herewith*]<br><br>Date:  August 20, 2012<br>Time: 8:30 a.m.<br>Place: 840 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 20, 2012, at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 840 of the above-entitled Court, located at 255 East Temple Street, Los Angeles, California 90012, nonparty Pacific Bell Telephone Company ("Pacific Bell") will and hereby does move the Court pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure for an order compelling the United States Attorneys' Office for the Central District of California to release the transcript of the 2003 grand jury testimony of Erin Finn ("Finn"), along with all documents and exhibits presented to Finn at the time of her grand jury testimony, in connection with the criminal investigation of Anthony Pellicano.

This motion is made following the conference of counsel pursuant to this Court's Criminal Motion, Trial, and Sentencing Order, and pursuant to Local Rule 57-1 of the Local Criminal Rules of the Central District of California and Local Rule 7-3 of the Local Civil Rules of the Central District of California, which took place on July 9, 2012.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Jason M. Frank, all pleadings and papers on file in this action, and upon such matters as may be presented to the Court at the time of the hearing.

Dated:  July 20, 2012                        EAGAN AVENATTI, LLP


By:    /s/ Jason M. Frank
JASON M. FRANK
Attorneys for Defendant
PACIFIC BELL
TELEPHONE COMPANY
(d/b/a AT&T California)

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................. 3

     A.   Background of Finn's Allegations of Wiretapping .............................. 3

     B.   Finn Admitted to the FBI and At the Pellicano Criminal Trial That
          She Believed That She Was a Victim of Wiretapping As Early as 2000 .......................... 4

     C.   Finn Cannot Remember What She Testified About at the Grand Jury ............................... 7

     D.   Finn Filed A Civil Suit Against Pacific Bell in September 2006 ........................................ 8

     E.   Finn Attempted to Distance Herself From Her Criminal Trial
          Testimony Regarding Her Belief in 2001 That She Had Been
          Wiretapped ......................................................................................... 9

     F.   The Pellicano Criminal Case ............................................................. 9

     G.   The United States Attorney's Office Refuses to Release Finn's Grand
          Jury Testimony ................................................................................ 10

III. THE COURT SHOULD ORDER THE RELEASE OF FINN'S GRAND
     JURY MATERIALS ..................................................................................... 11

     A.   Release of Finn's Grand Jury Testimony Is Necessary for the Purpose
          of Refreshing Finn's Recollection, Testing Her Credibility,
          Impeaching Her, and Overcoming Her Suppression of Facts ........................................ 11

     B.   The Need For Disclosure Is Greater Than the Need for Continued
          Secrecy ............................................................................................ 15

     C.   The Requested Materials Cover Only What Is Needed .................................................... 17

IV.  THIS COURT IS EMPOWERED TO RELEASE THE REQUESTED
     GRAND JURY MATERIALS ...................................................................... 17

V.   CONCLUSION ............................................................................................. 19

**PACIFIC BELL'S MOTION FOR ORDER RELEASING GRAND JURY TESTIMONY OF ERIN FINN**

# TABLE OF AUTHORITIES

### Cases

Callahan v. A.E.V., Inc.,
  947 F.Supp. 175 (W.D. Pa. 1996) ................................................ 12

Douglas Oil Co. v. Petrol Stops Northwest,
  441 U.S. 211 (1979) .......................................................... passim

Goldstein v. City of Long Beach,
  603 F.Supp.2d 1242 (C.D. Cal. 2009) ...................................... 16

In re Corrugated Container Antitrust Litigation,
  687 F.2d 52 (5th Cir. 1982) ...................................................... 12

In re Grand Jury Investigation,
  55 F.3d 350 (8th Cir. 1995) ...................................................... 18

Petrol Stops Northwest v. Continental Oil Co.,
  647 F.2d 1005 (9th Cir. 1981) .................................................. 11

State of Illinois v. Harper & Row Publishers, Inc.,
  50 F.R.D. 37 (1969) ........................................................... 12, 17

U.S. v. Procter & Gamble Co.,
  356 U.S. 677 (1958) ............................................................. 1, 11

### Statutes

28 C.F.R. § 16.21, et seq. ............................................................ 10

Cal. Pen. Code § 632 ................................................................... 8

Cal. Pen. Code § 637.2 ................................................................ 8

California Business & Professions Code § 17200 ............................ 8

Fed. R. Crim. P. 6 ...................................................................... 11

Fed. R. Crim. P. 6(a)(3)(C) ......................................................... 18

Fed. R. Crim. P. 6(a)(3)(E) ......................................................... 18

Fed. R. Crim. P. 6(e) .................................................... 1, 11, 15, 18

Fed. R. Crim. P. 6(e)(3)(C)(i) ...................................................... 18

Fed. R. Crim. P. 6(e)(3)(E) ........................................................................................ 11, 17

Fed. R. Crim. P. 6(e)(3)(G) ............................................................................................ 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PACIFIC BELL'S MOTION FOR ORDER RELEASING GRAND JURY TESTIMONY OF ERIN FINN**

## I.      INTRODUCTION

Pacific Bell Telephone Company ("Pacific Bell") files this motion pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure seeking the release of the grand jury testimony of Erin Finn ("Finn") in 2003 in connection with the criminal investigation of Anthony Pellicano ("Pellicano") and others, along with all documents and exhibits presented in connection with such testimony.

According to the indictment of Pellicano, Finn is one of the alleged victims of Pellicano's wiretapping activities.  In late April of 2003, Finn testified before the grand jury about facts known to her relating to Pellicano's alleged wrongdoing.  In May 2006, Finn filed a civil complaint in Los Angeles County Superior Court against Pacific Bell to assert causes of action based on her belief that she was a victim of Pellicano's wiretapping activities.  Among other defenses, Pacific Bell asserts that Finn's suit is barred by the statute of limitations.

According to the Supreme Court, "[p]arties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice to another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed."  Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222 (1979).  Pacific Bell satisfies these requirements.

*First*, the requested materials are needed to avoid a possible injustice.  "[T]he typical showing of particularized need arises when a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like."  Douglas Oil, 441 U.S. at 222 n. 12 (quoting U.S. v. Procter & Gamble Co., 356 U.S. 677, 683 (1958)).

Here, Finn contends that she was not on notice of sufficient facts to file causes of action based on wiretapping against Pacific Bell until the release of the indictment against Pellicano and others in February 2006.  At her deposition in connection with her civil case, she also attempted to distance herself from testimony she provided at the

Pellicano criminal trial in which she confirmed that she was "pretty sure" she had been wiretapped in or around 2001. Contrary to this position, however, Finn appears to have openly discussed her belief at her February, March, and April 2003 FBI interviews that she had been wiretapped by Pellicano in 2000 and 2001 at the behest of her ex-boyfriend Robert Pfeiffer and his attorneys. In addition, she related several anecdotes at the Pellicano criminal trial in March 2008 and at her depositions in 2011 and 2012 in connection with her civil case demonstrating that she believed at the time of the underlying events in 2000 and 2001 that her telephone lines were being wiretapped. Release of Finn's grand jury testimony, therefore, is necessary to test Finn's credibility concerning whether she was on notice of her wiretapping claims at the time she testified at the grand jury in late April 2003. Further, since Finn did not remember what she testified about at the grand jury hearing and her counsel instructed her not to answer questions about her grand jury testimony, release of her grand jury testimony is also necessary to refresh her recollection and overcome her and her counsel's attempt to suppress relevant facts.

*Second*, the need for disclosure is greater than the need for continued secrecy. Finn testified before the grand jury over *nine* years ago, and the grand jury has been disbanded. In addition, the subject of Finn's grand jury testimony is not secret, as the allegations of wrongdoing by Pellicano, including wiretapping, have long been made public via extensive media coverage and a lengthy criminal trial in 2008. Further, Pellicano and others have long been convicted of crimes relating to wiretapping and other wrongdoing. Accordingly, there is no concern here for preventing the escape of a person who has not yet been indicted, preventing interference with grand jury deliberations, preventing subornation of perjury or tampering with witnesses, encouraging witnesses to provide information to the grand jury, or protecting criminal defendants from embarrassment. In short, there are no cognizable consequences for release of Finn's grand jury testimony. On the other end of the scale, however, there are compelling reasons for release of the grand jury materials as explained above.

*Third*, Pacific Bell's request is appropriately tailored. Although scores of witnesses have testified before the grand jury in connection with the Pellicano criminal investigation, Pacific Bell only seeks the grand jury materials for Erin Finn in this motion[1] and has clearly articulated, with supporting evidence and foundation, the specific reasons why Finn's testimony is needed. Further, the release of the entire grand jury transcript is warranted because Finn's grand jury testimony likely dealt with the facts in her possession relating to why she believed she was a victim of Pellicano's alleged wrongdoing, and her civil case similarly is about harm suffered as a result of Pellicano's alleged wrongdoing.

In sum, this Court should enter an order requiring the release of Finn's grand jury testimony and all documents and exhibits shown to her at the grand jury hearing.

## II.   STATEMENT OF FACTS

### A.   <u>Background of Finn's Allegations of Wiretapping</u>

Erin Finn ("Finn") alleges that her telephone lines were wiretapped by Anthony Pellicano at the instructions of Robert Pfeiffer ("Pfeiffer") and his attorney Alan J. Weil ("Weil"), along with Weil's law firm Gaims Weil West & Epstein, LLP.

Pfeiffer is Finn's ex-boyfriend from 1997 to early 2000, and from the spring or summer of 2001 until September 2001. [Declaration of Jason Frank ("Frank Decl."), Ex. 1 (Deposition of Erin Finn, Mar. 18, 2011 ("Finn Depo. – Vol. I"), at 40:13-15, 41:1-14.] In 2000, Pfeiffer was fired by his employer at the time, a company called Z-Access, from his position as President, and Pfeiffer sued Z Access. [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 46:1-10; Frank Decl. Ex. 2 (Transcript of Erin Finn Criminal Trial Testimony, Mar. 25, 2008 ("Finn Crim. Tr.")) at 48:22-49:16.] In June 2000, Finn was deposed by attorneys representing Z Access concerning, among other things, her knowledge of Pfeiffer's use of illicit drugs. [Frank Decl. Ex. 2, Finn Crim. Tr. at 50:18-

---

[1] Concurrent with this motion, Pacific Bell is also filing a motion seeking the grand jury testimony of Vincent "Bo" Zenga.

**PACIFIC BELL'S MOTION FOR ORDER RELEASING GRAND JURY TESTIMONY OF ERIN FINN**

1  24, 53:12-23.]  During the deposition, Finn revealed that she had witnessed Pfeiffer
2  snorting what she believed to be "meth."  [Id.]

3       In response to this testimony, in the summer of 2000, Pfeiffer sued Finn claiming
4  she owed him money and shortly thereafter, after replacing his lawyer with Weil and
5  the Gaims Weil firm, amended his complaint to add a claim of slander against Finn.
6  [Frank Decl. Ex. 2, Finn Crim. Tr. at 54:10-55:3; Frank Decl. Ex. 1, Finn Depo. – Vol. I
7  at 41:15-23.]  Around this same time, Finn asserts that she started being wiretapped by
8  Pfeiffer.  [Id.]  Finn was aware in 2000 that Pellicano was a private investigator and that
9  he was working for Pfeiffer.  [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 214:1-3,
10  215:10-12.]

11       **B.**    **Finn Admitted to the FBI and At the Pellicano Criminal Trial That**
12          **She Believed That She Was a Victim of Wiretapping As Early as 2000**

13       In 2002, the FBI called Finn and informed her that she might have been a victim
14  of criminal activity by Pellicano.  [Frank Decl. Ex. 3 (Erin Finn Deposition, Mar. 19,
15  2011 ("Finn Depo. – Vol. II")) at 246:3-247:4.]  The FBI initially interviewed Finn on
16  February 5, 2003, March 26, 2003, and April 24, 2003.  [Frank Decl. Ex. 5; Frank Decl.
17  Ex. 1, Finn Depo. – Vol. I at 200:10-22, 216:13-217:1; Frank Decl. Ex. 3, Finn Depo. –
18  Vol. II at 244:6-15; Frank Decl. Ex. 6; Frank Decl. Ex. 3, Finn Depo. – Vol. II at
19  263:15-267:3; Frank Decl. Ex. 7; Frank Decl. Ex. 3, Finn Depo. – Vol. II at 270:15-25,
20  276:15-18.]  According to the "302" notes of these interviews along with her testimony
21  at the Pellicano criminal trial on March 25, 2008, Finn revealed a number of facts
22  demonstrating that she believed, or at least suspected, in 2000, 2001, and 2002 that she
23  had been wiretapped by Pellicano at the behest of Pfeiffer and Weil, including the
24  following:

25      •    At her initial interview with the FBI, Finn discussed her belief that "she
26          was being surveilled by Pellicano" and that Pellicano had been able to
27          wiretap her telephone or bug her apartment.  [Frank Decl. Ex. 3, Finn
28          Depo. – Vol. II, at 252:10-253:17; Frank Decl. Ex. 5 at 2.]

- During the underlying civil suit between her and Pfeiffer in 2000 and 2001, Finn received anonymous e-mails containing information about her movements, contents of her personal telephone conversations, and references to her legal strategies, including discussions with her lawyer at the time about filing for bankruptcy.  [Frank Decl. Ex. 5 at 2.]

- At her deposition in the underlying civil suit between her and Pfeiffer, Pfeiffer's attorneys showed her private e-mails obtained by hacking into her files.  [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 48:20-49:9, 51:12-52:1.]

- In July 2000, Finn believes that someone on Pfeiffer's behalf broke into her house and hacked into her computer only a week or two prior to her deposition in the underlying civil suit between her and Pfeiffer.  [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 42:12-19, 43:18-45:21, 48:1-19; Frank Decl. Ex. 2, Finn Crim. Tr. at 50:20-51:24.]

- In late July and August 2000, Finn received e-mails that were tracked to an Internet cafe near Pfeiffer's house which discussed "things that . . . they could only know if they were listening to my phone."  [Frank Decl. Ex. 2, Finn Crim. Tr. at 56:12-57:3; Frank Decl. Ex. 1, Finn Depo. – Vol. I at 65:19-66:1, 67:11-70:8, 70:21-71:17; Frank Decl. Ex. 3, Finn Depo. – Vol. II at 235:24-236:19.]

- Beginning in August 2000, Finn heard clicking noises on her telephone line.  [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 36:8-14, 75:12-76:6.]  She admitted that because of those clicking noises, at that time, "we definitely suspected that [wiretapping] could be the possibility" and that wiretapping "crossed my mind, yes."  [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 36:8-14, 77:16-25; Frank Decl. Ex. 3, Finn Depo. – Vol. II at 229:8-15.]

///
///

- In 2000, Finn called the telephone company and requested that someone come out to her home to inspect her telephone lines because she suspected that there was a "wiretap." [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 79:1-80:4, 83:3-16; Frank Decl. Ex. 3, Finn Depo. – Vol. II at 239:6-240:15, 243:14-25; Frank Decl. Ex. 5 at 2; Frank Decl. Ex. 6 at 1.] The clicking noises continued after the inspection. [Frank Decl. Ex. 3, Finn Depo. – Vol. II at 231:2-24.]

- In 2000, Finn discussed her belief with her neighbors, friends, and parents that she had been wiretapped. [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 78:10-14, 94:15-95:10, 154:5-7, 155:1-10, 157:9-11, 158:5-159:4, 161:24-162:20, 163:8-12, 169:18-22, 211:24-212:2.]

- On one or two occasions, in an attempt to defeat the wiretap, Finn called her second line from her first line and left the receivers on while a talk radio station was playing in the background in her apartment. [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 122:12-123:18.]

- Finn also used her neighbor's phone, cell phones, and pay phones to get around the wiretap. [Frank Decl. Ex. 2, Finn Depo. – Vol. I at 94:16-95:7, 128:2-18; Frank Decl. Ex. 3, Finn Depo. – Vol. II at 257:19-258:2; Frank Decl. Ex. 5 at 3.]

- During the time that she was living with Pfeiffer, Finn found a piece of paper with Pfeiffer's notes of Finn's private telephone conversations. [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 198:4-20, 198:20-200:4; Frank Decl. Ex. 2, Finn Crim. Tr. at 74:3-25; Frank Decl. Ex. 5 at 3-4; Frank Decl. Ex. 6 at 1.] Finn confronted Pfeiffer about these notes and she testified that Pfeiffer "told me they knew everything I said." [Id.] Seeing the piece of paper caused her to be "pretty sure" at the time that she had been wiretapped. [Frank Decl. Ex. 2, Finn Crim. Tr. at 74:3-7.]

///

- During the time that she was living with Pfeiffer, Pfeiffer directly told Finn "I knew what you were doing." [Frank Decl. Ex. 3, Finn Depo. – Vol. II at 259:7-260:9; Frank Decl. Ex. 5 at 3.]

- In her March 26, 2003 interview with the FBI, Finn revealed that she had recently received a telephone call from Pfeiffer in which Pfeiffer asked her if she had yet been contacted by the FBI regarding Pellicano, and that if Pfeiffer were to be contacted about Pellicano, he would blame her. [Frank Decl. Ex. 6 at 1.] The "call came after a recent series of newspaper and internet articles regarding ANTHONY PELLIACANO [sic] and PELLICANO'S alleged use of illegal wiretapping." [Id.]

- In her April 24, 2003 interview with the FBI, Finn revealed that she ran an escort service in 2001 and 2002 and initially used her home phone to conduct her business. [Frank Decl. Ex. 7 at 1.] "[S]he later became suspicious that her phone was 'tapped'" by Pfeiffer and then began using her cell phone as a result of her suspicions. [Frank Decl. Ex. 7 at 1.]

**C.    Finn Cannot Remember What She Testified About at the Grand Jury**

Finn testified before a federal grand jury in Los Angeles in April 2003. [Frank Decl. Ex. 9 (Erin Finn Deposition, Apr. 19, 2012 ("Finn Depo. – Vol. III")) at 120:13-15.] It is Pacific Bell's belief that the grand jury has disbanded.

Finn testified at her deposition that she does not recall whether she had been subpoenaed to testify at the grand jury about the alleged activities of Pfeiffer and Pellicano and the two of them working together. [Frank Decl. Ex. 9, Finn Depo. – Vol. III at 121:21-122:2.] She also testified at her deposition that she does not recall whether she testified about being wiretapped to the grand jury. [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 37:2-4.] When counsel for Pacific Bell attempted to probe her recollection about what Finn testified about before the grand jury, her counsel cut off all questioning. [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 37:10-37:25; Frank Decl. Ex. 9,

Finn Depo. – Vol. III at 140:6-143:1.]  At her counsel's instructions, Finn refused to testify about several key issues, including the following:

- Whether Finn testified to the grand jury about wiretapping.  [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 37:10-24; Frank Decl. Ex. 9, Finn Depo. – Vol. III at 140:6-21.]

- Whether Finn testified to the grand jury about issues related to Pellicano. [Frank Decl. Ex. 9, Finn Depo. – Vol. III at 140:22-141:8.]

- Whether Finn testified to the grand jury about issues related to Pfeiffer. [Frank Decl. Ex. 9, Finn Depo. – Vol. III at 141:9-17.]

- Whether Finn was shown documents at the grand jury proceeding.  [Frank Decl. Ex. 9, Finn Depo. – Vol. III at 142:15-143:1.]

According to Finn's counsel, issues regarding any of her testimony at the grand jury proceeding is "all privileged and private and confidential" and is "not fair game in discovery."  [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 37:12-14; Frank Decl. Ex. 9, Finn Depo. – Vol. III at 141:18-142:13.]

### D.   Finn Filed A Civil Suit Against Pacific Bell in September 2006

On September 8, 2006, Finn filed a complaint in the Superior Court for the County of Los Angeles against Pacific Bell.  She alleges Pacific Bell employees accessed her confidential telephone records and information from company databases and shared it with others outside the company. [Frank Decl. Ex. 8, Complaint, ¶¶17-20, 24-25.] She also alleges that Pacific Bell employees worked with Anthony Pellicano in a common scheme to eavesdrop on and record her confidential telephone conversations. [Id., ¶¶16, 21.]  Based on these allegations, Finn asserts causes of action against Pacific Bell for violation of the anti-eavesdropping provisions of the California Privacy Act (Cal. Pen. Code §§ 632 and 637.2), violation of section 17200 of the California Business & Professions Code, common law invasion of privacy, negligence, and negligent supervision.  [Id., ¶¶26-56.]

///

**E.** **Finn Attempted to Distance Herself From Her Criminal Trial Testimony Regarding Her Belief in 2001 That She Had Been Wiretapped**

As noted above, at the criminal trial, Finn testified that she was "pretty sure" that she had been wiretapped while living at Pfeiffer's home when she found a piece of paper with Pfeiffer's notes of Finn's private telephone conversations.  [Frank Decl. Ex. 2, Finn Crim. Tr. at 74:3-7.]   At her deposition, however, Finn attempted to distance herself from this testimony, likely in an attempt to save her claims from the statute of limitations bar.  [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 204:5-17, 204:22-205:9, 205:15-206:10, 213:8-25.]  Consequently, Finn's testimony to the grand jury eight years before her attempt to recant her testimony will likely help establish what she really suspected at the time, since it is contemporaneous.

**F.** **The Pellicano Criminal Case**

In 2008, after a criminal trial lasting over two months, Pellicano was convicted of running a criminal enterprise that engaged in illegal wiretapping and bribing of former Pacific Bell employees, among other wrongful acts.  [Frank Decl. Ex. 10.]   On December 18, 2008, Pellicano was sentenced to fifteen (15) years in prison.  [Frank Decl. Ex. 10.]  Pellicano is currently serving his sentence at the Federal Correctional Institution in Big Springs, Texas.  [Frank Decl. ¶12.]

Pfeiffer entered a plea agreement in which he pled guilty to aiding and abetting wiretapping in exchange for testifying against Pellicano.  [Frank Decl. Ex. 2, Finn Crim. Tr. at 40:15-41:19.]  On or about August 3, 2009, Pfeiffer was sentenced to time served, a monetary fine, and community service.  [Frank Decl. Ex. 11.]

///

///

///

///

///

9

**G.     The United States Attorney's Office Refuses to Release Finn's Grand Jury Testimony**

On April 3, 2006, this Court entered a protective order in this matter prohibiting the distribution, dissemination, and disclosure of certain information being produced by the government in connection with the criminal investigation and prosecution of Pellicano and others.  [Frank Decl. Ex. 12.]

On December 21, 2009, this Court amended the protective order to include civil plaintiffs and ordered that "[c]ivil litigants who seek access to criminal discovery materials currently subject to the Protective Order ('Materials') and who become signatories to the Protective Order must submit requests for the Materials to the Government per the process set forth in the Touhy regulations."  [Frank Decl. Ex. 13.]

Thus, on or about May 26, 2010, the parties in the In Re Pellicano Cases, Lead Case No. BC316318, pending before the Superior Court for the County of Los Angeles, jointly submitted a subpoena to the U.S. Attorneys' Office in Los Angeles for documents (other than FBI 302 notes of interviews which were covered in a separate subpoena) in the possession of the government related to the criminal investigation of Anthony Pellicano and others.  [Frank Decl. Ex. 14.]  The requests were made pursuant to the *Touhy* regulations, 28 C.F.R. § 16.21, *et seq.* (hereafter, the "Touhy Requests").  In these requests, the parties in the In Re Pellicano Cases requested, among other things, "[a]ll audio or video recordings regarding interviews" with, and "[a]ny evidence of or testimony relating to the wiretapping and police database searches" of, the alleged wiretapping victims, including Finn.  [Frank Decl. Ex. 14 at Nos. 171, 297 at pp. 92, 216-217.]

Despite several efforts by various civil litigants, the government has not produced the requested materials in response to the *Touhy* Requests.  Specifically, with respect to the grand jury materials requested in this Motion, on July 9, 2012, the U.S. Attorneys' office informed Pacific Bell that it would not release the grand jury testimony of Finn and would oppose this Motion.  [Frank Decl. ¶17, Ex. 15.]

**PACIFIC BELL'S MOTION FOR ORDER RELEASING GRAND JURY TESTIMONY OF ERIN FINN**

## III.   THE COURT SHOULD ORDER THE RELEASE OF FINN'S GRAND JURY MATERIALS

Rule 6 of the Federal Rules of Criminal Procedure govern federal grand jury proceedings.  Despite the general secrecy of grand jury proceedings, "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand jury matter: . . . (i) preliminarily to or in connection with a judicial proceeding."  Fed. R. Crim. P. 6(e)(3)(E).  "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice to another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222 (1979).  Moreover, "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification."  Id. at 223.

As explained below, Pacific Bell satisfies all three parts of the test.

### A.   **Release of Finn's Grand Jury Testimony Is Necessary for the Purpose of Refreshing Finn's Recollection, Testing Her Credibility, Impeaching Her, and Overcoming Her Suppression of Facts**

Under the first prong of the Douglas Oil test, parties seeking grand jury transcripts "must show that the material they seek is needed to avoid a possible injustice to another judicial proceeding[.]"  441 U.S. at 222.  "[T]he typical showing of particularized need arises when a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like." Id. at 222 n. 12 (quoting U.S. v. Procter & Gamble Co., 356 U.S. 677, 683 (1958)).

Following this guidance of the Supreme Court, numerous courts have authorized the release of grand jury transcripts for impeachment, to refresh a witness' recollection, or to test a witness' credibility at trial or in a deposition.  See, e.g., Petrol Stops Northwest v. Continental Oil Co., 647 F.2d 1005, 1007-1009 (9th Cir. 1981) (in civil antitrust case, upholding order granting request for transcripts of grand jury testimony

of the defendant's employees in connection with criminal antitrust indictment "to impeach, refresh recollections, and test credibility."); In re Corrugated Container Antitrust Litigation, 687 F.2d 52, 55 (5th Cir. 1982) (where witness who testified at grand jury "experienced considerable and frequent difficulty in recalling the events about which he was questioned" at his deposition, holding that district court properly ordered release of witness' grand jury transcript to help refresh his recollection); Callahan v. A.E.V., Inc., 947 F.Supp. 175, 178-179 (W.D. Pa. 1996) (granting motion to compel production of transcripts of grand jury testimony, along with documents submitted to and received by grand jury, because "[g]iven that the grand jury investigation began seven years ago, some witnesses may have difficulty remembering what was said to the grand jury."); State of Illinois v. Harper & Row Publishers, Inc., 50 F.R.D. 37, 40 (1969) (concluding "there is a compelling need for the disclosure" of grand jury testimony of several witnesses who all "demonstrated a remarkable lack of memory concerning critical events in controversy" and where in camera review of grand jury testimony revealed "material discrepancies on important factual issues or significant facts that the witness failed to recollect.").

Similar to these cases, here, the Court should order the disclosure of Finn's grand jury testimony for the purpose of refreshing Finn's recollection, testing her credibility, and impeaching her, as it relates to Pacific Bell's defense of statute of limitations. Specifically, Finn contends that she was not on notice of sufficient facts to file causes of action based on wiretapping against Pacific Bell until the release of the indictment against Pellicano and others in February 2006. [Frank Decl. Ex. 9, Finn Depo. – Vol. III at 20:7-21:11.] She also attempts to distance herself from her criminal trial testimony in which she confirmed that she was "pretty sure" she had been wiretapped while living with Pfeiffer in 2001. [Frank Decl. Ex. 2, Finn Crim. Tr. at 74:3-7; Frank Decl. Ex. 1, Finn Depo. – Vol. I at 204:5-17, 204:22-205:9, 205:15-206:10, 213:8-25.]

///

///

**PACIFIC BELL'S MOTION FOR ORDER RELEASING GRAND JURY TESTIMONY OF ERIN FINN**

Yet, Pacific Bell has reason to believe Finn was on notice of her wiretapping claims as early as 2000, but not later than her FBI interviews in February, March, and April 2003.  According to the FBI 302 notes, her testimony at the Pellicano criminal trial in March 2008, and her own recent deposition testimony, Finn admitted that she believed as early as 2000 and by 2003 at the very latest that her telephone lines had been wiretapped in 2000 and 2001 during Finn's civil suit against Pfeiffer.  She related several anecdotes of events occurring between 2000 and 2002 supporting her belief that she had been wiretapped by Pellicano at the behest of Pfeiffer and Weil.  Thus, when in late April 2003, Finn was summoned to testify before the grand jury, it is only logical to assume and infer that Finn *also* told the grand jury—as she told the FBI and as she testified at the criminal trial—that she believed she had been wiretapped.

Unfortunately, a definitive answer to the question of whether Finn testified before the grand jury that she believed she was the victim of wiretapping is currently unknown.  That is because at her deposition, Finn testified she does not recall what she discussed at the grand jury hearing.  Specifically, she does not recall whether she testified about the alleged activities of Pfeiffer and Pellicano and the two of them working together.  [Frank Decl. Ex. 9, Finn Depo. – Vol. III at 121:21-122:2.]  She also does not recall whether she testified about being wiretapped.  [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 37:2-4.]

Moreover, when Pacific Bell attempted to probe her specific recollection, her counsel shut down all questioning by instructing her not to answer any questions about her grand jury testimony.  [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 37:10-37:25; Frank Decl. Ex. 9, Finn Depo. – Vol. III at 140:6-143:1.]  At her counsel's instructions, Finn refused to testify about several key issues, including the following:

- Whether Finn testified to the grand jury about wiretapping.  [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 37:10-24; Frank Decl. Ex. 9, Finn Depo. – Vol. III at 140:6-21.]

///

- Whether Finn testified to the grand jury about issues related to Pellicano. [Frank Decl. Ex. 9, Finn Depo. – Vol. III at 140:22-141:8.]

- Whether Finn testified to the grand jury about issues related to Pfeiffer. [Frank Decl. Ex. 9, Finn Depo. – Vol. III at 141:9-17.]

- Whether Finn was shown documents at the grand jury proceeding. [Frank Decl. Ex. 9, Finn Depo. – Vol. III at 142:15-143:1.]

According to Finn's counsel, issues regarding any of her testimony at the grand jury proceeding is "all privileged and private and confidential" and is "not fair game in discovery." [Frank Decl. Ex. 1, Finn Depo. – Vol. I at 37:12-14; Frank Decl. Ex. 9, Finn Depo. – Vol. III at 141:18-142:13.]

Therefore, release of the grand jury testimony is warranted to refresh Finn's recollection and to test her credibility concerning her contention that she was not on notice of her potential wiretapping claims until February 2006. Release of Finn's grand jury testimony is also warranted to overcome her and her counsel's suppression of any information concerning her testimony.

Moreover, in addition to the statute of limitations issue, disclosure of Finn's grand jury testimony is also important to test Finn's credibility and for impeachment on many issues affecting the merits of the case. The veracity of Finn's testimony about what she suspected about wiretapping must be tested against what she told the grand jury about wiretapping at a time in April 2003 that was much closer to the alleged underlying events of 2000 and 2001.

In sum, Pacific Bell has established an evidentiary basis to suggest that Finn's grand jury testimony patently contradicts her current contention that she did not have sufficient facts to sue for wiretapping at the time of her grand jury appearance in April 2003. Therefore, to refresh her recollection, test her credibility, impeach her, and overcome her counsel's suppression of facts, Pacific Bell must be given access to her grand jury testimony.

///

**B.** **The Need For Disclosure Is Greater Than the Need for Continued Secrecy**

Under the second prong of the <u>Douglas Oil</u> test, parties seeking grand jury materials under Rule 6(e) must show "that the need for disclosure is greater than the need for continued secrecy[.]"   <u>Douglas Oil</u>, 441 U.S. at 222.  As explained by the <u>Douglas Oil</u> court, the reasons behind the general rule of grand jury secrecy are as follows:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

<u>Id.</u> at 219 n. 10.  "[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." <u>Id.</u> at 223.

Here, none of the above-listed reasons for preserving the secrecy of grand jury proceedings is implicated in this case.  Finn testified before the grand jury over *nine* years ago and, indeed, the grand jury has been disbanded.  The subject of Finn's grand jury testimony is not secret.  The allegations of wrongdoing by Pellicano, including wiretapping, have long been made public during these nine-plus years via extensive media coverage and a lengthy criminal trial in 2008.  Based on the allegations against

him at trial, Pellicano and others were convicted of running a criminal enterprise for allegedly engaging in illegal wiretapping, bribing Pacific Bell employees to disclose confidential telephone records and information, and bribing police officers to disclose confidential records and information from criminal databases, and on December 18, 2008, Pellicano was sentenced to fifteen (15) years in prison. Further, Pfeiffer has pled guilty to aiding and abetting Pellicano in conducting wiretapping and has already served his prison sentence.

Accordingly, there is no concern here for (1) preventing the escape of a person who has not yet been indicted, (2) preventing interference with grand jury deliberations, (3) preventing subornation of perjury or tampering with witnesses, (4) ensuring persons with information about the commission of crimes make free and untrammeled disclosures. Moreover, since Pellicano and others have already been convicted of crimes and are serving (or have served) time in prison, there is also no interest in keeping Finn's grand jury testimony secret to save the criminal defendants from embarrassment or to protect their innocence. In short, there are no cognizable consequences for release of Finn's grand jury testimony. See Goldstein v. City of Long Beach, 603 F.Supp.2d 1242, 1259 (C.D. Cal. 2009) (rejecting "abstract concern for grand jury secrecy" where County could not "identify any consequences for specific individuals if their status as a grand jury witness were disclosed in the limited manner proposed.").

On the opposite end of the scale, however, there are compelling reasons for release of the grand jury materials. As explained above, Finn's testimony before the grand jury is needed to refresh her recollection, test her credibility, impeach her, and overcome Finn and her counsel's suppression of facts, on issues of significance in this case. Therefore, the Court should order the release of the requested grand jury materials.

///

///

**PACIFIC BELL'S MOTION FOR ORDER RELEASING GRAND JURY TESTIMONY OF ERIN FINN**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.   The Requested Materials Cover Only What Is Needed

Under the third prong of the Douglas Oil test, the court determines whether the request for grand jury materials "is structured to cover only material so needed." Douglas Oil, 441 U.S. at 222.

Here, Pacific Bell's request is appropriately tailored.  As the Court is aware, scores of witnesses testified before the grand jury in connection with the Pellicano criminal investigation.  In this Motion, however, Pacific Bell only seeks the grand jury materials for a single witness and has clearly articulated, with supporting evidence and foundation, the specific reasons why Finn's testimony is needed in connection with defending Finn's civil case against Pacific Bell.  Moreover, since grand jury testimony likely dealt with the facts in her possession relating to why she believed she was a victim of Pellicano's alleged wrongdoing, and her civil case similarly is about harm suffered as a result of Pellicano's alleged wrongdoing, the entirety of the grand jury transcript should be released.  See State of Illinois v. Harper & Row Publishers, Inc., 50 F.R.D. 37, 40 (N.D. Ill. 1969) (ordering entirety of grand jury transcripts to be released because "[t]he most relevant parts of the transcripts are interwoven with the remainder of the witness' testimony, so that various portions should not be segregated from one another.").  Therefore, Pacific Bell's request is structured to cover the materials needed.

### IV.   THIS COURT IS EMPOWERED TO RELEASE THE REQUESTED GRAND JURY MATERIALS

Pacific Bell files its motion in this Court as opposed to filing the motion in the underlying state court action because "[a] petition to disclose a grand-jury matter under Rule 6(C)(3)(E)(i) must be filed in the district where the grand jury convened."  Fed. R. Crim. P. 6(e)(3)(E); see also Douglas Oil, 441 U.S. at 226 ("requests for disclosure of grand jury transcripts should be directed to the court that supervised the grand jury's activities.")

///
///

1   "If the petition to disclose arises out of a judicial proceeding in another district,
2   the petitioned court must transfer the petition to the other court unless the petitioned
3   court can reasonably determine whether disclosure is proper."   Fed. R. Crim. P.
4   6(e)(3)(G).  This part of Rule 6(e), however, does not apply to this case because Pacific
5   Bell's request arises out of a *state* court proceeding.   As stated in the advisory
6   committee notes construing the language of Rule 6(e)(3)(G):

7   　　　It must be emphasized that transfer is proper only if the
8   　　　proceeding giving rise to the petition 'is in *federal district court*
9   　　　*in another district*.'  If, for example, the proceeding is located
10  　　　in another district but is at the *state level*, a situation
11  　　　encompassed within rule 6(e)(3)(C)(i) [now renumbered], *In re*
12  　　　*Special February 1971 Grand Jury v. Conlisk, supra*, *there is*
13  　　　*no occasion to transfer*. Ultimate resolution of the matter
14  　　　cannot be placed in the hands of the state court, and in such a
15  　　　case the federal court in that place would lack what *Douglas Oil*
16  　　　recognizes as the benefit to be derived from transfer:  'first-
17  　　　hand knowledge of the litigation in which the transcripts
18  　　　allegedly are needed.'

19  1983 Adv. Comm. Notes to former Fed. R. Crim. P. 6(a)(3)(C)[2] (emphasis added).

20  　　　Moreover, the allegations underlying Finn's civil action are closely related to the
21  allegations against Pellicano and his associates in the criminal case.  Indeed, this Court
22  presides over two civil cases involving alleged wiretapping filed by alleged victims of
23  Pellicano.  [Frank Decl., ¶18.]  Therefore, this Court is sufficiently knowledgeable
24  regarding the issues involved in Finn's civil case to determine whether disclosure of the
25  grand jury materials is appropriate.  See In re Grand Jury Investigation, 55 F.3d 350,
26  356 (8th Cir. 1995) (concluding that "the district court had sufficient knowledge to
27
28  　[2] This subdivision has since been renumbered as Rule 6(a)(3)(E).

18
**PACIFIC BELL'S MOTION FOR ORDER RELEASING GRAND JURY TESTIMONY OF ERIN FINN**

1   determine whether disclosure of the requested materials was proper" where "criminal

2   and civil actions [were] closely related" and "the acts giving rise to criminal liability are

3   the precise acts which will lead to civil liability if the [requesting party] is successful.").

4   **V.     CONCLUSION**

5          For the reasons stated above, Pacific Bell Telephone Company respectfully

6   requests the Court GRANT its motion and enter an order requiring the release of the

7   requested grand jury materials.

8

9   Dated: July 20, 2012                        EAGAN AVENATTI, LLP

10

11                                              By:     /s/ Jason M. Frank

12                                                   JASON M. FRANK
                                                    Attorneys for Defendant
13                                                   PACIFIC BELL
                                                    TELEPHONE COMPANY
14                                                   (d/b/a AT&T California)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PACIFIC BELL'S MOTION FOR ORDER RELEASING GRAND JURY TESTIMONY OF ERIN FINN**